# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01549-SCT

*BOBBY OSBOURNE*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/10/2017 |
| TRIAL JUDGE: | HON. JAMES McCLURE, III |
| TRIAL COURT ATTORNEYS: | RHONDA MASON AMIS |
| | AZKI SHAH |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| | BOBBY OSBOURNE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. Bobby Osbourne was convicted in the Tate County Circuit Court of aggravated assault, following a jury trial. Osbourne appeals from that conviction, claiming that his trial counsel was constitutionally ineffective for numerous reasons: (1) for failing to move for a mistrial after discovering at trial that the handwritten notes taken by one of investigators, who had taken a statement from Osbourne, had not been provided to Osbourne's defense

before trial, (2) for failing to investigate possible exculpatory evidence; (3) for failing to perfect Osbourne's direct appeal; and (4) for failing to obtain video evidence that corroborated Osbourne's trial testimony.

¶2. The State contends that the only ineffective-assistance claim that can be addressed on this record is the claim that Osbourne's trial counsel failed to perfect a direct appeal from Osbourne's conviction. Accordingly, the State declines to stipulate that the record is adequate to address Osbourne's remaining ineffective-assistance claims.

¶3. We agree with the State. Given the record before us, we address only the ineffective-assistance claim pertaining to trial counsel's purported failure to perfect a direct appeal.

## FACTS AND PROCEDURAL HISTORY

¶4. Osbourne was found guilty of aggravated assault for shooting John McCarver during an altercation between the two men at a gas station following a traffic incident that occurred on Interstate 55. Multiple witnesses testified for the State. Osbourne was the only witness to testify for the defense during the guilt phase at trial.

¶5. Evidence was presented that McCarver, his wife Tressa, and his seven-year-old child were traveling south on I-55 to their home in Coldwater, Mississippi, in the afternoon on March 18, 2016. Tressa was driving, and McCarver was sitting in the passenger seat. Tressa passed a white van that she testified was traveling slowly in the passing lane. After passing the van, Tressa remained in the fast lane. The white van then drove up behind the McCarvers' vehicle and began tailgating their rear bumper. McCarver told Tressa to slow down and to get over into the other lane because their exit was coming up.

2

¶6.     According to Tressa, when she exited I-55 at the Coldwater exit, the white van followed. Tressa pulled into a Shell gas station located close to the exit and parked at one of the gas pumps. The white van pulled into the gas station and parked nearby.

¶7.     Osbourne, the driver of the van, got out of the van and approached the McCarvers' vehicle. McCarver got out of his vehicle and walked toward Osbourne. An argument ensued, and, according to witnesses for the State, Osbourne hit McCarver in the face. Osbourne then pulled a gun from the back of his waistband, walked backed to his van, and got back inside it. McCarver and Tressa testified that McCarver did not have a gun on his person or inside his vehicle.

¶8.     McCarver followed Osbourne to the van. McCarver reached inside the van, grabbed Osbourne's keys from the ignition switch, and threw them to the ground. McCarver told Osbourne he had to wait for the police.

¶9.     At that point, Osbourne reached for his gun. Seeing this, McCarver shut the driver's-side door to the van to keep Osbourne from getting out. Osbourne then fired a shot at McCarver. The bullet shattered the driver's-side window and hit McCarver in his left side.

¶10.    Emergency personnel and law enforcement were called to the scene. McCarver was transported to the hospital, and Osbourne was arrested.

¶11.    While in custody, Osbourne told investigators Mark Sansom and Eric Ainsworth that he had been traveling south on I-55 when a white vehicle came up behind him, began going fast and slow, and eventually passed him. Osbourne said he turned off the same exit and stopped at the Shell gas station to get an energy drink. Osbourne parked his van near the

3

curb closest to the road in front of the gas station. Osbourne said he saw the white vehicle's male passenger reach under the seat. So Osbourne grabbed a gun from his console, put it in his waistband, and exited the van. The male passenger exited his vehicle and began arguing with Osbourne and struck Osbourne with his hands. Osbourne went back to his van and got inside. The man came over to his van and reached inside the partially lowered van window, grabbed Osbourne's keys, and threw them to the ground. Osbourne told investigators that he felt threatened at that point, and he shot the man through the window of the van.

¶12.    At trial, Osbourne testified that he was traveling south on I-55 in rush-hour traffic. He approached the McCarvers' vehicle, which was traveling in the passing lane. Osbourne flashed his lights for the vehicle to allow him to pass, but the vehicle would not move into the other lane. When Osbourne tried to pass in the other lane, the vehicle changed lanes to block him. Osbourne said he was traveling about ninety miles per hour, and "the lady driving the car" started hitting the brakes.

¶13.    Osbourne said he signaled to turn off the Coldwater exit, not knowing that the McCarver vehicle was exiting there also. Osbourne said he always gets off I-55 at the Coldwater exit because that is where he likes to stop to get an energy drink. He said he pulled into the gas station the McCarvers also had pulled into because he wanted to identify the person who "liked to have killed" him.

¶14.    Osbourne said his heart was still pounding from the incident on I-55. He got out of his van and grabbed his gun. He explained that he always carries a gun because he often has to travel to Memphis, Tennessee. Osbourne said he started walking toward the door of the

4

store, when McCarver quickly walked up to him and put his chest against his. Osbourne said that he did not hit McCarver but instead that he pushed McCarver away from him. He claimed that McCarver reached for something in his right back pocket, which Osbourne believed was a gun. Osbourne then pulled his gun in response and was backing away, but McCarver "bum-rushed" him.

¶15. Osbourne said he got back into his van, and McCarver started beating, kicking, and rocking the van. Osbourne said he was trying to get the van out of gear to drive away, but McCarver came up, hit Osbourne, and tried to open the door. Osbourne said McCarver was hitting him through the window with his right hand, and McCarver snatched Osbourne's keys with his left hand. Osbourne said that, while McCarver was hitting him, he reached down and picked up his gun and just shot it.

¶16. Osbourne said he was frightened, and he told his friend, who was a passenger in the van, "get in the van, let's go." Osbourne then called 911.

¶17. Osbourne told the jury that the police interviewed him for approximately one hour. And he told the jury that the police had lied about what he had told them.

¶18. The trial took place on June 26, 2017. The trial court held a sentencing hearing on July 12, 2017. On July 13, 2017, Osbourne's trial counsel filed a post-trial motion for a judgment of acquittal, or, in the alternative, for a new trial. On August 9, 2017, the trial court sentenced Osbourne to ten years in the custody of the Mississippi Department of Corrections, with five years of nonreporting post-release supervision.

¶19. On November 3, 2017, trial counsel filed a notice of appeal and a motion for leave to appeal *in forma pauperis*. The trial court denied the motion, because Osbourne's notice of appeal was not timely filed, and no motion for an out-of-time appeal had been filed.

¶20. On November 8, 2017, trial counsel filed a notice of appeal. On November 29, 2017, trial counsel filed a motion to substitute counsel. That same day, the Office of Indigent Appeals filed an entry of appearance in Osbourne's appeal.

¶21. On December 13, 2017, this Court denied Osbourne's motion to substitute appellate counsel, because Osbourne had not been deemed indigent. On February 28, 2018, a three-judge panel of this Court held that insufficient information before the panel allowed for an out-of-time appeal and remanded the matter to the trial court for an evidentiary hearing on Osbourne's request for an out-of-time appeal.

¶22. On remand, the trial court heard conflicting testimony from Osbourne and his trial counsel as to whether or when an appeal had been requested. "[O]n the side of caution," the trial court decided to granted Osbourne an opportunity to file an out-of-time appeal. Represented by the Office of Indigent Appeals, this appeal followed.

## DISCUSSION

¶23. To succeed on an ineffective-assistance-of-counsel claim, Osbourne must meet both prongs of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as adopted by this Court in *Stringer v. State*, 454 So. 2d 468, 476-78 (Miss. 1984). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. Second, the defendant must "show that there is a

6

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶24. In *Dartez v. State*, this Court reiterated that, "generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). This is because "[a]n appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately." *Id.* at 423 (citing *Archer*, 986 So. 2d at 955).

¶25. This Court has also said it will address ineffective-assistance claims on direct appeal only when "the record affirmatively shows ineffectiveness of constitutional dimensions, or the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Robinson v. State*, 247 So. 3d 1212, 1228 (internal quotation marks omitted) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)).

¶26. As mentioned, we agree with the State that the only ineffective-assistance claim that can be decided on this record is trial counsel's purported failure to perfect a timely appeal. The other claims concern matters outside this record.

¶27. Therefore, we will address only that particular claim. We dismiss Osbourne's other ineffective-assistance claims without prejudice in order to allow Osbourne to raise such claims in a post-conviction relief action, if he chooses.

7

**Whether trial counsel was ineffective per se for failing to perfect Osbourne's appeal.**

¶28. At the outset, regardless of whether trial counsel's performance was deficient in that he failed to timely perfect the direct appeal, Osbourne fails to articulate how he was prejudiced by trial counsel's failure, given that the trial court granted Osbourne an out-of-time appeal. The *Strickland* Court advised as follows:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697.

¶29. Here, Osbourne's appellate counsel cites *Triplett v. State*, 579 So. 2d 555 (Miss. 1991), and *Holland v. State*, 656 So. 2d 1192 (Miss. 1995), for the blanket contention that Osbourne should be granted a new trial because trial counsel did not timely perfect an appeal. But neither *Triplett* nor *Holland* support any such notion.

¶30. In *Triplett*, a post-conviction relief proceeding, this Court reversed and rendered the trial court's denial of an out-of-time appeal after finding that trial counsel had been derelict in failing to perfect the defendant's direct appeal. *Triplett*, 579 So. 2d at 556-59. The *Triplett* Court, however, simply directed the trial court to permit the defendant's appeal. *Id.* at 559. It did not hold that the defendant was entitled to a new trial.

8

¶31. In *Holland*, the defendant was convicted of possession of cocaine with intent to distribute. *Holland*, 656 So. 2d at 1198. On direct appeal, this Court found that the evidence was insufficient to support a conviction of possession with intent to distribute but that it was sufficient to support a conviction for simple possession. *Id.* at 1198-99. The *Holland* Court prefaced the opinion by affirming that the defendant was barred from raising a sufficiency-of-the-evidence claim on appeal because trial counsel had "failed to renew his motion for a directed verdict, request a peremptory instruction, or file any post-trial motions concerning the sufficiency of the evidence." *Id.* at 1198. But the *Holland* Court also determined that trial counsel's failures denied the defendant constitutionally effective assistance of counsel because "the trial court would have undoubtedly been reversed and a decision rendered for simple possession but for the deficient representation of counsel." *Id.*

¶32. Thus, the ineffective-assistance claim in *Holland* was predicated on a reversible error that occurred at trial. That is not the case here. The ineffective-assistance claim is predicated only on trial counsel's purported failure to perfect an appeal and nothing more. Accordingly, we find no merit to it.

## CONCLUSION

¶33. Osbourne's conviction and sentence are affirmed.

¶34. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**