# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00884-SCT

*CORREY JAMES DARTEZ a/k/a CORREY*
*DARTEZ*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 06/11/2014
TRIAL JUDGE: HON. LISA P. DODSON
TRIAL COURT ATTORNEYS: MARY ELIZABETH McFADYEN
 ROBERT C. STEWART
COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF THE STATE PUBLIC
 DEFENDER
 BY: ERIN ELIZABETH PRIDGEN
  GEORGE T. HOLMES
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
 BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY: JOEL SMITH
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 10/29/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. Correy James Dartez was found guilty of murder by a Harrison County jury and sentenced to life in prison in the custody of the Mississippi Department of Corrections. The trial court denied Dartez's post-trial motion for a new trial or judgment notwithstanding the verdict. Dartez timely appeals his conviction to this Court, claiming his trial counsel was constitutionally ineffective for failing to raise an insanity defense and for not challenging the

introduction into evidence of Dartez's confession to the police that he had killed his wife Victoria Dartez (Victoria). We decline to address Dartez's ineffective-assistance-of-counsel claim on direct appeal.

**FACTS**

¶2. Dartez met Victoria when the two were patients in a nursing home in Peoria, Illinois. At the time, Dartez and Victoria were both in their forties, and they both had a host of medical issues. Both were diagnosed with bipolar disorder. Victoria also had Down's Syndrome. Despite their medical complications, the couple fell in love and married.

¶3. Approximately three years into their marriage, the couple decided to move to Dartez's hometown of Biloxi, Mississippi. They moved into Seashore Oaks, a public housing apartment complex. The couple received Social Security and public assistance benefits as their sole source of income. Dartez soon became worried that he would be unable to provide for his wife's medications at the same level as when the couple lived in Illinois.

¶4. In early January 2013, three months after moving back to Mississippi, Dartez was hospitalized for overdosing on Tylenol. Because of this overdose, Dartez suffered from liver damage and remained in the hospital for eight days.

¶5. After returning home, Dartez spoke to his wife about their future. According to Dartez, Victoria was worried that she was not going to make it to her next birthday due to her health complications. Dartez also was worried that he would not make it to his next birthday.

¶6. In the early evening hours of January 30, 2013, while Victoria was lying on the couple's sleeper sofa, Dartez smothered her with a pillow. Afterward, Dartez called 911, identified himself to the dispatcher and told the dispatcher that he had just killed his wife.

¶7. When Biloxi police officers arrived, they found Dartez with a paring knife in his hand. The police ordered Dartez to drop the knife, but Dartez told them to shoot him. The police tased Dartez after he refused to drop the knife.

¶8. Dartez was later taken to the Biloxi Police Department where he was interviewed by Officer Tim McKaig. Officer McKaig read Dartez his *Miranda* [1] rights. Officer McKaig testified that he went over Dartez's rights with him for approximately ten minutes before beginning the interview.

¶9. Dartez told Officer McKaig three times that he did not want an attorney. During the interview, Officer McKaig stopped several times to ask Dartez if he understood his rights and what Officer McKaig was telling him. Dartez said he already had been informed of his rights by officers when they were at the apartment. Officer McKaig presented them again and asked Dartez to sign a statement saying he understood his rights. Officer McKaig gave Dartez multiple opportunities to stop talking and request an attorney, but Dartez refused each time.

¶10. Dartez told Officer McKaig that Victoria had been suffering ever since they got married. He described the numerous medications Victoria was taking and how he could not afford them. At trial, Victoria's home-health nurse testified that Victoria received her

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

medicines free from St. Vincent DePaul, a charitable agency through the Catholic Diocese. Dartez told Officer McKaig that he did not want Victoria to worry about him anymore or suffer so he wanted her to go ahead and "pass on." Dartez told Officer McKaig that he was no longer happy, and Officer McKaig asked him why. Dartez said it was because he could not help his wife anymore and, "It was just getting, it was taking too much."

¶11.    Dartez also told Officer McKaig that he previously had thought about killing his wife, but the urges had not been as strong as they were this day. Dartez admitted to being off his "psych" medicine for about a day leading up to the killing. The interview continued with Dartez explaining to Officer McKaig exactly which pillow he used to smother Victoria.

¶12.    Throughout the interview, Dartez seemed remorseful for his actions. He asked Officer McKaig to let him know exactly when Victoria had passed away, which hospital Victoria was at and if her body was still there. Dartez also requested that the police contact a certain Catholic priest to perform last rites over Victoria's body.

¶13.    After the interview, Dartez was formally charged with murder. Dartez's trial counsel filed a motion for a psychiatric evaluation, which the court granted. Dartez was evaluated by Dr. Beverly Smallwood. A competency hearing was held, and Dartez's attorney told the court that "there [are] no issues as far as his mental status." Defense counsel then read Dr. Smallwood's conclusions and opinion into the record.

¶14.    The trial court determined that Dartez was competent to stand trial based upon Dr. Smallwood's evaluation report, the opinion of Dartez's trial counsel, and questioning by the trial court. Based upon the contents of the report, Dartez's trial counsel requested that it be

4

placed under seal. The trial court agreed and placed the full report under seal and also placed a redacted version under seal, allowing the State to see it.

¶15. After the competency hearing, the trial court and both parties confirmed that no insanity defense was raised at trial. The trial court reminded Dartez's attorney that if an insanity defense was raised, Dr. Smallwood's full report might have to be produced.

¶16. Dartez did not put on a defense at trial. A jury found Dartez guilty of murder and this appeal followed.

**DISCUSSION**

¶17. Dartez contends he was denied his Sixth Amendment right to effective assistance of counsel by failing to raise an insanity defense and for not challenging the introduction into evidence of statements Dartez had made to the police, as those statements were not knowingly and voluntarily given.

¶18. We reiterate that, generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). An appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately. *Id*. In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief (PCR). *Read v. State*, 430 So. 2d 832, 837 (Miss.1983). We may, however, address an ineffectiveness claim on direct appeal if the presented issues

are based on facts fully apparent from the record. M.R.A.P. 22. We do not find that to be the case here.

¶19.    In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial. *Holly v. State*, 716 So. 2d 979, 989 (Miss. 1998) (applying the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct 2052, 80 L. Ed.2d 674 (1984). We look at the totality of the circumstances to determine whether counsel's efforts were both deficient and prejudicial. *Id*. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient. *Id*.

¶20.    Whether Dartez's trial counsel should have raised an insanity defense and whether trial counsel should have challenged Dartez's confession involves facts not fully apparent from the record before us. Thus, we are unable adequately and properly to address Dartez's ineffective-assistance-of-counsel claim on direct appeal. Therefore, we affirm Dartez's conviction. If he chooses, Dartez may assert and argue this claim through a PCR petition. However, Dartez must first seek leave of this Court before presenting such a petition in the trial court. Miss. Code Ann. § 99-39-7 (Rev. 2015).

## CONCLUSION

¶21.    The judgment of the Harrison County Circuit Court is affirmed.

¶22.    **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR.**