# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00356-COA

**JERAMI WILLIAMS A/K/A JERAMI WARDELL WILLIAMS A/K/A JERAMI W. WILLIAMS A/K/A JERAMY WARDELL WILLIAMS**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2014 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A DWELLING AND SENTENCED AS A HABITUAL OFFENDER TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 03/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. An Adams County jury convicted Jerami Williams of burglary of a dwelling, and the Adams County Circuit Court sentenced Jerami as a habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). *See* Miss. Code

Ann. § 99-19-81 (Rev. 2015). Jerami now appeals his conviction and sentence and asserts that his trial counsel was ineffective, thus violating his constitutional right to a fair trial. We decline to address the merits of Jerami's ineffective-assistance-of-counsel claim on direct appeal in this case, and we accordingly affirm the trial court's judgment.

## FACTS

¶2. On July 8, 2013, Christopher Williams awoke around approximately 1:30 a.m. to discover two men kicking in one of the doors to the home he shared with his father. Christopher testified that he recognized both men: Travon Williams, who lived in Christopher's neighborhood, and another man, who he recognized as a former coworker of his father. Christopher did not know the man's name at the time. Christopher testified that the two men entered the house, unaware of his presence. Christopher then left the house unnoticed and walked down the street to his cousin's house to call the police.

¶3. Christopher stated that the police arrived ten minutes later, and he then returned to his house where he witnessed police officers enter his home and walk out with Travon Williams. While standing outside of his house, Christopher observed a green Mitsubishi automobile drive past the house, and he alerted the police about the vehicle. Christopher testified that he could not see inside of the vehicle due to the tinted glass.

¶4. Christopher provided a statement to the police officers. They showed Christopher a photo lineup, where Christopher identified Jerami as the other burglar whose name he did not know. At trial, Christopher identified Jerami as one of the men he witnessed breaking into his house.

¶5.     Officer Paulesha McBride of the Natchez Police Department responded to the call regarding the burglary on July 8, 2013. Officer McBride testified that she and several other officers entered Christopher's home and encountered Travon hiding in a closet. As a result of questioning Travon, the officers discovered the identity of the second man suspected of breaking into the house: Jerami. Officer McBride further testified that based on information provided by Travon, the officers began looking for a green two-door car.

¶6.     Officer McBride stated that while en route back to the police station, she observed an unattended green automobile parked at an Exxon gas station which fit the description of the vehicle described by Travon. Officer McBride stated that the vehicle's tag was registered to Jerami.

¶7.     Alexis Davis testified as a witness for the defense. Alexis provided that on the evening of July 8, 2013, she received a phone call from Jerami around midnight asking her to pick him up near Fat Mama's restaurant because his car had broken down. Alexis stated that she and her boyfriend, Kareem Baldwin, picked up Jerami, and afterwards the three of them drove around and smoked marijuana. Alexis testified that while out riding around and smoking, they drove past the Exxon where Jerami left his car and they observed a police officer around the car. Alexis explained that they did not stop because "Kareem [was] on curfew" and not supposed to be out of the house at that hour. However, on cross-examination, Alexis testified that she could not recall the precise time that she picked up Jerami from Fat Mama's, agreeing that it could have been midnight or 3:00 a.m., or any time during the night. The State also questioned Alexis about a written statement that

Kareem provided to an investigator on July 10, 2013, that she had also signed. At trial, Alexis confirmed that the statement was correct when she signed it. In the statement, Kareem claimed that it was Jerami, and not Kareem, who did not want to stop at the Exxon due to the police presence.

¶8.     Jerami testified in his own defense, stating that on the evening of July 8, 2013, his car began "acting up," so he pulled into the Exxon and called Alexis and Kareem to bring him jumper cables. Jemari stated that he explained to the Exxon store clerk that he needed to leave his car in the parking lot temporarily. Jerami also testified that Alexis and Kareem picked him up at the Exxon, and not Fat Mama's, as Alexis previously testified. Regarding the contradictory testimony, Jerami explained that Alexis "was kind of in and out" that evening.

¶9.     Jerami testified that after Alexis and Kareem picked him up, he shared some synthetic marijuana with them to show his appreciation. Jerami stated that the three rode around and smoked marijuana. Jerami explained that because they were smoking marijuana, and because Kareem was on probation, they did not stop when they drove past the Exxon and saw policemen around his car. Jerami testified that Alexis and Kareem drove him home instead. When asked what time he was dropped off, Jerami responded that he "really didn't look at the clock, but [knew] it had to have been between 2:30, maybe close to 3:00" in the morning.

¶10.    The jury found Jerami guilty of burglary of a dwelling. Following a hearing, the trial court determined that Jerami constituted a habitual offender pursuant to section 99-19-81. The trial court accordingly sentenced Jerami to serve twenty-five years in the custody of the

4

MDOC, with no possibility of his sentence being reduced or suspended, and no possibility of parole or probation. The trial court also ordered Jerami to pay all court costs and fees, including a $200 prosecution fee. On November 26, 2014, Jerami filed a motion for a new trial, which the trial court denied. Jerami now directly appeals his conviction and sentence.

## DISCUSSION

¶11. Jerami argues that his trial counsel was constitutionally ineffective under the Sixth Amendment and Article 3, Section 26 of the Mississippi Constitution for: not requesting an alibi instruction; informing the jury during opening statements that Jerami had other convictions; and eliciting testimony from Jerami about his prior convictions.

¶12. The Mississippi Supreme Court has "reiterate[d] that, generally, ineffective-assistance-of-counsel claims are more appropriately brought during post[]conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951, 955 (¶15) (Miss. 2008)). The supreme court explained that

> [a]n appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately. In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post[]conviction relief (PCR).

*Id.* at 423 (¶10) (internal citation omitted). However, an ineffective-assistance-of-counsel claim can be addressed on direct appeal when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the

findings of fact of the trial judge." *Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015); *see also Read v. State*, 430 So. 2d 832, 841 (Miss. 1983). In the case before us, both parties did not stipulate that the record is adequate for this Court to make a finding on direct appeal. Thus, the proper inquiry is whether the record affirmatively shows that Jerami was denied effective assistance of counsel. *See* M.R.A.P. 22(b).

¶13. In determining whether the record affirmatively shows ineffective assistance of counsel, we turn to the precedent of *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), for guidance. In *Strickland*, 466 U.S. at 687-96, the United States Supreme Court set forth a two-pronged test that a defendant must meet to prevail on an ineffective-assistance-of-counsel claim: the "defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Dartez*, 177 So. 3d at 423 (¶19). To determine whether the counsel's performance was both deficient and prejudicial, this Court examines the totality of the circumstances, keeping in mind that "a strong but rebuttable presumption [exists] that [a] counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.; *see also Braggs v. State*, 121 So. 3d 269, 273 (¶11) (Miss. Ct. App. 2013) ("[A] presumption exists that an attorney's performance falls within the wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic."). Furthermore, the decisions by counsel "whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." *Braggs*, 121 So. 3d at 273 (¶11). Accordingly, this Court will find a counsel's performance deficient "[o]nly where it is reasonably probable that, but

6

for the attorney's errors, the outcome would have been different." *Dartez*, 177 So. 3d at 423 (¶19).

¶14.    After reviewing the record herein and applying the standard set forth in *Strickland*, we find that the record before us reflects no affirmative showing of ineffective assistance of counsel on its face. Jerami's ineffective-assistance-of-counsel claim is more appropriately brought during postconviction proceedings, and we therefore deny relief without prejudice as to Jerami's right to pursue this claim during postconviction proceedings. *See Braggs*, 121 So. 3d at 273 (¶11). Accordingly, we affirm the trial court's judgment.

¶15.    **THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.**

        **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**