# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01086-COA

**JOSHUA CHANCE WARREN**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/07/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA BLOUNT |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/28/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this direct appeal, we must determine whether Joshua Warren's trial counsel was ineffective for failing to request a cautionary instruction about the reliability of accomplice testimony. Finding no error, we affirm.

## PROCEDURAL HISTORY

¶2.     Warren was convicted of grand larceny by a jury in the Neshoba County Circuit Court. He was sentenced as a habitual offender to serve five years in the custody of the Mississippi Department of Corrections. He was also ordered to pay a $2,000 fine and $2,250 in restitution. Warren filed a posttrial motion requesting a new trial, which the trial court

denied. He now appeals, asserting that his trial counsel was ineffective.

**FACTS**

¶3.    Irene Eakes testified that on August 20, 2016, her granddaughter, Kassie Woods, and Warren came to her house. The two had been driven there by Debra Fox, who remained in the car. Woods was reporting to a drug-rehabilitation center the next day and needed Eakes's help to prepare. Eakes stated that the two were in her house for around one hour and that both were out of her sight at different times. She saw Warren place her phone's charger in his pocket and confronted him. She testified that she became worried Warren would take her phone. At one time she saw both Woods and Warren go into her bedroom. At another time, she was getting Warren a drink at his request and noticed that Woods disappeared for a short time. Later, several hours after Warren and Woods left her house, Eakes realized that seven rings were missing from her bedroom. She estimated the total value of the seven rings was approximately $4,500. Eakes called the Neshoba County Sheriff's Department (NCSD) to report her rings missing, suspecting that Woods and Warren had taken them.

¶4.    Woods testified that she and Warren planned to steal Eakes's rings. She stated that the plan was for Warren to distract Eakes while she stole the rings. After leaving Eakes's house, Woods gave Warren the rings and told him to sell them. They ended up trading most of the rings for drugs and money. Woods admittedly lied in her initial statement to law enforcement. She told them that she and Warren planned to steal the rings but that she distracted Eakes while Warren stole the rings. During trial, Woods admitted to receiving a plea deal in exchange for testifying against Warren. Woods also testified that Warren later

2

sent her a letter while she was in rehab, stating that he still had some of the rings and would pawn them while he was in North Mississippi.

¶5.     Debra Fox testified that she drove Warren and Woods to Eakes's house. She did not know the two were planning to rob Eakes. When the two got back into her car and asked her for a ride to the pawnshop, she declined. She heard the two mention the money, stating "I do know that the jewelry was mentioned, . . . but I never saw it." Fox said Warren later told her that they had sold the rings for drugs and money. On cross-examination, Fox stated she heard Warren ask Woods if he was going to get into trouble.

¶6.     Kevin Baysinger, an investigator with the NCSD, testified that he conducted the investigation. Investigator Baysinger testified that Eakes suspected Warren and Woods had stolen her rings. He stated that the rings were never recovered.

¶7.     Warren testified in his own defense. He stated that he did not know of Woods's plan to steal Eakes's rings. He said Woods told him the rings were given to her by either her mother or Eakes. He said he did take the rings to a local pawnshop to get a price and admittedly sold one for $20 to $25 when the two went to a casino that night. He testified that he put the other rings in a bag in the trunk of the car belonging to the person who drove Woods to rehab the next day.

**DISCUSSION**

¶8.     We first note "that, generally, ineffective-assistance-of-counsel claims are more appropriately brought during [postconviction] proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951, 955 (¶15) (Miss. 2008)).

3

The supreme court has explained that

> [a]n appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately. In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for [postconviction] relief (PCR).

*Id.* at 423 (¶8). But, an ineffective-assistance-of-counsel claim can be addressed on direct appeal when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015). In the case before us, both parties did not stipulate that the record is adequate for this Court to make a finding on direct appeal. Thus, the proper inquiry is whether the record affirmatively shows that Warren was denied effective assistance of counsel of constitutional dimensions. *See* M.R.A.P. 22(b).

¶9.     Warren argues that the State's case rested entirely upon the uncorroborated accomplice testimony of Woods; thus, a cautionary instruction was mandatory. "Although granting a cautionary instruction regarding the testimony of an accomplice is within the trial judge's discretion, such an instruction is required when the accomplice's testimony is the sole basis for the conviction, and the defendant's guilt is not clearly proven." *Williams v. State*, 32 So. 3d 486, 490 (¶12) (Miss. 2010).

¶10.    We cannot say from a review of the record before us that Warren's trial counsel was deficient in a constitutional sense. There was testimony other than Woods's testimony tying Warren to the crime. Eakes's testimony places Warren at her house and, at one point, in her

4

bedroom. Eakes thought Warren had distracted her so that Woods could steal her rings. Fox stated that Warren told her he had sold some of the rings for drugs and money. This issue is without merit.

¶11. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**