# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00101-COA

ROSCOE JOHNSON A/K/A ROSCOE LERNERD JOHNSON

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2018 |
| TRIAL JUDGE: | HON. CAROL L. WHITE-RICHARD |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/23/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., TINDELL AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Roscoe Johnson was indicted for sexual battery in accordance with Mississippi Code Annotated section 97-3-95(2) (Rev. 2014). On December 11, 2017, a Leflore County jury found Johnson guilty as charged. The circuit court sentenced Johnson to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and ten years to serve, followed by five years of post-release supervision. In this direct appeal, Johnson argues that his counsel was ineffective at trial. The present record before us is insufficient to address the claim; therefore, we decline to address the merits without

prejudice and affirm the verdict and sentence.[1]

**FACTS**

¶2.     Until December 2015, Roscoe Johnson lived with his wife, Calanthia, and her two grandchildren, SM and CD.[2] Calanthia worked for the local hospital, which meant Johnson was responsible for the children's care after school. CD testified that, in August 2015, Johnson began to touch her inappropriately. CD described five separate instances of abuse involving Johnson. All five occurred in August 2015. At the time of the abuse, CD was sixteen years old.

¶3.     CD testified that Johnson began touching her buttocks on the outside of her clothing while she was in the kitchen of their home. After CD told Johnson not to touch her, he stopped. Two days after the first incident, Johnson again grabbed CD on her buttocks. During this instance, Johnson told CD to "[not] tell [her] grandmother that [he] did it." The abuse then progressed to Johnson touching CD in her "front area," which she later identified as her vagina. CD was standing up in the living room when Johnson approached her and put his hands inside of her clothes and started to insert his finger into her vagina. Johnson told CD he "wanted to make [her] feel good." CD testified that she moved his hand and told him again not to touch her. She then went to her bedroom.

¶4.     About a day after the third incident, Johnson dragged CD from the living room into

---

[1] Johnson may assert the claim in a properly filed motion for post-conviction relief.

[2] Because both children were minors at the time of the abuse against CD, we protect their identity by use of a pseudonym.

2

his bedroom when she arrived home from school. CD tried to resist and grabbed the doorway, but Johnson pulled her inside. CD again tried to resist Johnson's advances by falling on the floor, but Johnson continued to drag her once she fell. Johnson then closed the door to the bedroom. CD ran to the other side of the room but could not escape. Johnson pushed her onto the bed and took off her pants and underwear. He then took off his own pants and underwear. Johnson assaulted CD by licking her vagina and attempting to insert his penis into her vagina and anus but was unsuccessful. CD testified that Johnson told her again that he wanted to make her feel good and to not tell her grandmother "because it will ruin [their] marriage." CD escaped by kicking Johnson in his penis.

¶5.     The final alleged incident was similar to when Johnson had previously dragged CD into his bedroom. This time, however, CD testified that Johnson showed her a pornographic video and again tried to put his penis in her vagina and anus after performing oral sex on the minor child. This fifth encounter ended with CD telling Johnson "[y]ou can't keep doing this to me. You're my grandfather. I'm suppose to look up to you. You're suppose to take care of me, not hurt me." After that, Johnson stopped abusing CD.

¶6.     The record indicates that around the time of the abuse, Johnson was drinking excessively and using crack cocaine. Johnson testified at trial that CD had fabricated the abuse because she was angry that Johnson disciplined her for flirting with boys and for sending lewd text messages to boys her age. He maintained that he never assaulted his step-granddaughter.

¶7. CD admitted that she did not tell anyone about the abuse until December 2015. CD testified that she did not report it sooner because Johnson was still living in the home. In December 2015, she felt ashamed and guilty and decided to report the abuse to her grandmother. While Johnson was abusing CD, the only other person in the home was SM, her brother. SM testified that when he returned home from school each day, Johnson would instruct him to go take a bath. Although SM did not know where Johnson and CD were at first, he testified that Johnson would be "in the bedroom with [his] sister with the door closed."

¶8. After CD disclosed what Johnson had done, her grandmother immediately reported the abuse to the Greenwood Police Department. Edgar Gibson, an investigator with the Greenwood Police Department, testified that CD tested negative for sexually transmitted diseases. CD's grandmother, however, testified that a physician told her that CD had an infection that could have resulted from sexual abuse.

¶9. At the trial on December 11, 2017, Shavonne Taylor, a family protection specialist with the Mississippi Department of Human Services, testified. When asked what her investigation revealed, she stated that "to [her] knowledge, sexual abuse was substantiated." When she was asked if it involved CD, Taylor responded "Miss – yes, and [SM]." Johnson's attorney immediately objected and moved for a mistrial. The judge denied the mistrial because Johnson's attorney did not file a motion in limine to keep out mention of any other abuse allegations except those involving CD. The trial court gave an immediate oral limiting

instruction to the jury, and the jury unanimously affirmed it would disregard the testimony. After deliberations, the jury returned a guilty verdict. Johnson was sentenced to fifteen years in the custody of MDOC with five years suspended and ten to serve, followed by five years of post-release supervision. Aggrieved with his conviction, Johnson now appeals and claims that his counsel was ineffective.

**ANALYSIS**

¶10. Johnson's appeal rests on a single claim that his counsel was ineffective by failing to file a motion in limine to prevent any mention of prior abuse against his step-grandson, SM, and failing to offer a jury instruction that would define "position of trust or authority" within Mississippi Code Annotated section 97-3-95(2).

¶11. A challenge of the effectiveness of one's counsel is "more appropriately brought during post-conviction proceedings." *Parker v. State*, 30 So. 3d 1222, 1232 (¶36) (Miss. 2010). Any review of a claim of ineffective assistance of counsel is confined strictly to the record. *Colenburg v. State*, 735 So. 2d 1099, 1102 (¶6) (Miss. Ct. App. 1999). The Mississippi Supreme Court has elaborated on the reasoning behind this restriction:

> An appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately. In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief (PCR).

*Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015). If the claim of ineffective assistance of counsel is based on "facts fully apparent in the record," this Court can consider

the issue. *Id.* In the alternative, the parties may also stipulate that the record is adequate to allow this Court to consider the findings of fact of the trial judge. *Robinson v. State*, 68 So. 3d 721, 723 (¶10) (Miss. Ct. App. 2011). "If this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm 'without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.'" *Id.* (citing *Colenburg*, 735 So. 2d at 1101 (¶5)).

¶12. Here, the record is devoid of any concrete evidence of Johnson's counsel's ineffectiveness. Likewise, the parties have made "no stipulation as to the adequacy of the record," which means this Court is charged with the task of determining whether Johnson was denied effective counsel. *Johnson v. State*, 196 So. 3d 973, 975 (¶8) (Miss. Ct. App. 2015). The record before us does not clearly show ineffective assistance of counsel, but we note that there has been no finding of fact to show otherwise. Therefore, bound only to the record before us, this Court declines to address this issue and declines to address the merits of Johnson's claim without prejudice. Johnson may apply for the Supreme Court's leave to raise his claim of ineffective assistance of counsel through post-conviction relief process. Miss. Code Ann. § 99-39-7 (Rev. 2015).

¶13. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.**