# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00929-COA

CORNELIUS YOUNG                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                      APPELLEE

DATE OF JUDGMENT:               06/04/2018
TRIAL JUDGE:                    HON. JANNIE M. LEWIS-BLACKMON
COURT FROM WHICH APPEALED:      YAZOO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: STACY L. FERRARO
ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                BY:  JEFFREY A. KLINGFUSS
                                     SCOTT STUART
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                    REVERSED AND REMANDED - 04/14/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    In March 2005, Cornelius Young was found guilty of murder and sentenced to a term

of life imprisonment without eligibility for parole.  Young was seventeen years, seven

months, and twenty-five days old when he committed the offense.  Following the United

States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), Young filed a

pro se motion for post-conviction relief in which he sought to be re-sentenced to a term of

life imprisonment with eligibility for parole.  Young was appointed an attorney, and his re-

sentencing hearing was held before the Yazoo County Circuit Court.  After conducting the

re-sentencing hearing, the circuit court ruled that Young was not entitled to relief under

*Miller*. Young appealed, raising three assignments of error relating to this determination and its constitutional ramifications. Young also asserts that he received ineffective assistance of counsel at his re-sentencing hearing because his lawyer did not present the circuit court with readily available evidence of his rehabilitation in prison. We find that the face of the record affirmatively shows that Young was denied effective assistance of counsel of constitutional dimensions on this basis. We therefore reverse and remand for a new *Miller* re-sentencing hearing.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. On May 28, 2004, Cornelius Young was indicted for the August 1, 2003 murder of Wilson Thomas, in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2000). After a jury trial in the Yazoo County Circuit Court and a guilty verdict, Young was sentenced to serve life in the custody of the Mississippi Department of Corrections (MDOC). The jury verdict and sentencing judgment were set aside and vacated, and a new trial was granted, because Young's lawyer had been suspended from the practice of law at the time of the trial.

¶3. The second jury trial was held in March 2005. There is no transcript or other summary of the facts surrounding Young's murder trial in the record on this appeal. Evidence presented at Young's *Miller* re-sentencing hearing, however, shows that Young fatally shot Thomas in the shoulder and chest area on August 1, 2003. There were numerous witnesses to the shooting who identified Young as the shooter. Investigator Carl Shaffer with the Yazoo County Sheriff's Department also testified that a week earlier Young had shot Thomas

in the head, which resulted in a "grazing" wound.[1] He further testified that there were also witnesses to this shooting. Thomas was taken to the hospital for that head wound, treated, and then released. It was established at the *Miller* hearing that there was no evidence presented at trial that the victim, Thomas, was armed or had threatened Young at the time of either shooting.

¶4. Young's defense at his trial was self-defense, and the jury was also instructed on the lesser-included offense of manslaughter. With respect to Young's self-defense argument, there was testimony at Young's *Miller* re-sentencing hearing that Thomas was larger than Young, eleven years older, had been in the Marines, and that at times prior to the shootings Thomas had "bullied" and "chased" Young after Young was involved in a police complaint against Thomas for "coming around" the house belonging to the mother of Young's girlfriend. Young's mother testified that Thomas called Young a "snitch" and started to chase and bully Young after that incident.

¶5. As noted, the jury was instructed on self-defense and manslaughter, but the jury rejected both and found Young guilty of deliberate-design murder. Young was sentenced to serve life in the custody of the MDOC. Pursuant to the Probation and Parole Law, Mississippi Code Annotated section 47-7-3 (Supp. 2002), Young was not eligible for parole. The Mississippi Supreme Court affirmed, per curiam, Young's conviction and life-without-parole sentence on December 4, 2008. Decision, *Young v. State*, No. 2007-KA-01753-SCT

---

[1] There was also testimony from Young's uncle that the "grazing" wound Thomas incurred was because his "girlfriend hit him with a pipe." There is no indication in the record before us whether this evidence was presented at Young's trial.

(Miss. Dec. 4, 2008).

¶6.     On May 24, 2013, Young filed a "Motion for Leave to Proceed in the Trial Court in the Mississippi Supreme Court," alleging that his mandatory life-without-parole sentence was unconstitutional in the light of *Miller*. The Mississippi Supreme Court granted Young leave to file his "Motion to Vacate Sentence" in the Yazoo County Circuit Court on November 12, 2014. Young filed a pro se motion for post-conviction collateral relief (PCR) on March 16, 2018, and attached to his motion a number of certificates he earned for completing or participating in rehabilitative programs in prison.

¶7.     The circuit court granted Young's PCR motion on March 20, 2018, and appointed the lawyer who had also been his trial attorney to represent Young in the *Miller* re-sentencing hearing, which was held on May 11, 2018. At Young's *Miller* re-sentencing hearing, Young's counsel failed to present the certificates Young earned for completing or participating in rehabilitative programs in prison, though they were attached to Young's PCR motion, and Young's counsel submitted no other mitigating evidence relating to Young's "capability of rehabilitation," a factor the circuit court is required to consider under *Miller*.[2] Nor did Young's counsel address this factor in closing arguments at the *Miller* re-sentencing hearing or rebut the State's argument that there was no evidence of Young's possibility of rehabilitation. Because two of Young's assignments of error on appeal relate to evidence presented, or the rehabilitation evidence not presented, at Young's re-sentencing hearing, we will further address these issues in our discussion below.

---

[2] *Parker v. State*, 119 So. 3d. 987, 995-96 (¶19) (Miss. 2013).

¶8.     After considering the evidence presented at the *Miller* re-sentencing hearing and the argument of counsel at that hearing, the circuit court found that Young did not qualify as a juvenile who would be entitled to a sentence making him eligible for parole under *Miller*. Accordingly, the circuit court ruled that its "original sentence of life in the custody of the [MDOC] shall stand and continue." Young appealed.

**DISCUSSION**

¶9.     Young raises four issues on appeal: (1) that he was denied his due process right to a procedure addressing and resolving whether he is "permanently incorrigible"; (2) that the circuit court erred in failing to "take into account how each of the *Miller* factors counsel against a life-without-parole sentence"; (3) that his trial counsel provided ineffective assistance of counsel at his *Miller* re-sentencing hearing by failing to present the circuit court with evidence of Young's rehabilitation in prison; and (4) that the state and federal constitutions bar the practice of sentencing juveniles to life without eligibility for parole.

¶10.    In his first assignment of error, Young asserts that because there was no specific mention or finding of "permanent incorrigibility" at his *Miller* re-sentencing hearing, he was denied his "due process right to a procedure that addresses and reliably resolves whether he is the rare, permanently incorrigible juvenile homicide offender who may be sentenced to life without parole." This Court and the Mississippi Supreme Court have rejected this argument, as most recently articulated by the supreme court in *Wharton v. State*, No. 2017-CT-00441-SCT, 2019 WL 6605871, at *4-5 (¶¶25-27) (Miss. Dec. 5, 2019), as follows:

> As this Court has concluded, *Miller* does not "require trial courts to make a finding of fact regarding a child's incorrigibility." *Chandler v. State*, 242 So.

5

3d 65, 69 (Miss. 2018) (citing *Montgomery* [*v. Louisiana*], 136 S. Ct. [718,] 735 [(2016)]) [(other citation omitted)]. Nor does *Miller* impose a "rebuttable presumption . . . in favor of parole eligibility for juvenile offenders." *Chandler*, 242 So. 3d at 69. And as this Court held in *Jones*, the burden rests with the juvenile offender "to convince the sentencing authority that Miller considerations are sufficient to prohibit" a sentence of life without parole. *Jones* [*v. State*], 122 So. 3d [698,] 702 [(¶14) (Miss. 2013)] [(other citations omitted)]. . . . *Montgomery*, likewise, implies as much with the admonition that "prisoners like Montgomery must be given *the opportunity to show* their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." *Montgomery*, 136 S. Ct. at 736-37 (emphasis added).

Mississippi's PCR Act provides this opportunity to prisoners, such as Wharton, whose convictions and sentences were final when *Miller* was decided. [(Citation omitted)]. Consistent with *Miller* and *Montgomery*, prisoners such as Wharton are entitled to relief under the PCR Act, if they can demonstrate that their life-without-parole sentence is unconstitutional under the Eighth Amendment.

This requires showing that, under application of the *Miller* factors adopted in *Parker*, [119 So. 3d. at 995-96 (¶19),] the offender's life-without-parole sentence is unconstitutional. *See Montgomery*, 136 S. Ct. at 736.

In the light of this precedent, Young's assertions with respect to this assignment of error require no new discussion in this case.

¶11. This Court and the supreme court have also rejected Young's fourth assignment of error—that sentencing a juvenile to life without eligibility for parole violates the Eighth Amendment of the United States Constitution and Article 3, Section 28 of the Mississippi Constitution.[3] Accordingly, we also find as to this argument that no new discussion is required in this case. We now address Young's two remaining assertions in combination

---

[3] *See Wharton*, 2019 WL 6605871, at *3 (¶22); *Jones v. State*, 285 So. 3d 626, 631 (¶¶14-15) (Miss. Ct. App. 2017), *cert. granted*, 250 So. 3d 1269 (Miss. 2018), *cert. dismissed*, No. 2015-CT-00899-SCT (Miss. Nov. 29, 2018), *cert. granted*, No. 18-1259 (U.S. Mar. 9, 2020); *Cook v. State*, 242 So. 3d 865, 877-78 (¶45) (Miss. Ct. App. 2017).

below.

### The Circuit Court's Application of *Miller* and Young's
### Ineffective-Assistance-of-Counsel Claim

¶12. The United States Supreme Court held in *Miller* that the Eighth Amendment to the United States Constitution prohibits imposing a "mandatory" life-without-the-possibility-of-parole sentence on an offender who was under the age of eighteen at the time of his offense. *Miller*, 567 U.S. at 465. In *Parker*, the supreme court recognized that although "*Miller* does not prohibit life without parole sentences," *Parker*, 119 So. 3d at 995 (¶19), it does require that the sentencing authority "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* (quoting *Miller*, 567 U.S. at 480). In *Miller*, the United States Supreme Court identified a number of factors it found to be relevant in making the sentencing decision, as follows:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [(Citations omitted)]. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Miller*, 567 U.S. at 477-78.

¶13. As the supreme court recently held in *Wharton*, 2019 WL 6605871, at *4 (¶25), "the

burden rests with the juvenile offender to convince the sentencing authority that *Miller* considerations are sufficient to prohibit a sentence of life without parole." (Citations and internal quotation marks omitted). Regarding our standard of appellate review, the supreme court held in *Chandler*, 242 So. 3d at 68 (¶7), that "there are two applicable standards of review in a *Miller* case. First, whether the trial court applied the correct legal standard is a question of law subject to de novo review." Second, "[i]f the trial court applied the proper legal standard, its sentencing decision is reviewed for an abuse of discretion." *Id.*

¶14.    The "correct legal standard" requires that the circuit court "afford[] [the defendant] a hearing and sentence[] [the defendant] after considering and taking into account each factor identified in *Miller* and adopted in *Parker*." *Chandler*, 242 So. 3d at 68 (¶8). In this case, the circuit court held a re-sentencing hearing. Following the hearing, the circuit court issued a written order addressing the evidence presented and the application of the *Miller* factors to this case. We find that the circuit court applied the correct legal standard. However, because we are reversing with respect to the fifth *Miller* factor, the possibility of rehabilitation, we decline to address or comment on the trial court's analysis or findings as to the other four factors.

¶15.    Significant to the outcome of this appeal, as to the fifth *Miller* factor, the circuit court found that there was "no evidence of the possibility of rehabilitation from the circumstances of the incident or evidence from witnesses." However, it is undisputed that evidence of rehabilitation did exist at the time of Young's *Miller* re-sentencing hearing but was not offered into evidence at that hearing. Additionally, the face of the *Miller* re-sentencing

8

hearing transcript shows that defense counsel failed to rebut the prosecutor's express argument that no rehabilitative evidence existed, nor did defense counsel even address the possibility of Young's rehabilitation in her closing argument at the *Miller* re-sentencing hearing.

¶16. For these reasons, Young asserts that he received ineffective assistance of counsel because his attorney failed to present readily available evidence that he is capable of rehabilitation and thus not "permanently incorrigible." This evidence consisted of a number of certificates that Young earned in prison that he had attached to his PCR motion, including: (1) Relay for Life Offender Walk-A-Thon, (2) Inside Out Dad, (3) Pre-Release Job Assistance Program, (4) 2017 Global Leadership Summit, (5) Big Brother Mentorship/Leadership, (6) Workforce Readiness, (7) Moral Recognition Therapy, (8) Wexford Anger Management Program, (9) Substance Abuse Education Program, (10) Anger Management Group Therapy, and (11) Cage Your Rage. Even though this evidence was readily available, Young's lawyer did not present it to the circuit court at Young's *Miller* re-sentencing hearing, nor did Young's lawyer even address the rehabilitation factor in her closing arguments at the *Miller* re-sentencing hearing or rebut the State's argument that no such evidence existed.

¶17. In *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020), the supreme court articulated the circumstances under which an appellate court may consider an ineffective-assistance-of-counsel claim on direct appeal, as follows:

> "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239,

9

1242 (Miss. 2016) (internal quotation marks omitted) (quoting *Dartez v. State*, 177 So. 3d 420, 422-23 (Miss. 2015)). This Court will address such claims on direct appeal when "[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)). This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit. *See, e.g.*, *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss. 2017); *see also* M.R.A.P. 22.

In deciding whether to go forward on this issue, this Court must determine whether the record affirmatively shows that Young was denied effective assistance of counsel of constitutional dimensions. *Id.*; *Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017).[4]

¶18.    The United States Supreme Court, in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), established the standard for assessing whether counsel's assistance was ineffective. To demonstrate that counsel provided ineffective assistance, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness, and (2) the defense was prejudiced as a result. *Id.* Prejudice is established if counsel's deficient performance "had a 'reasonable probability' of affecting the outcome of the case." *Carson v. State*, 212 So. 3d 22, 27 (¶17) (Miss. 2016) (quoting *Strickland*, 466 U.S. at 695).

¶19.    The State asserts that the failure to present mitigating evidence is not per se ineffective

---

[4] Neither Young nor the State assert that the record is inadequate to address Young's ineffective-assistance-of-counsel claim on direct appeal. Young requests, in the alternative, that if the Court finds the evidence insufficient to address the issue, that the Court deny this issue without prejudice to afford Young the option to pursue his claim in a post-conviction proceeding. *See Williams*, 228 So. 3d at 952-53 (¶14).

assistance of counsel, and thus the Court should deny Young's claim for relief on this issue. *See Moffett v. State*, 156 So. 3d 835, 849 (¶23) (Miss. 2014). In *Moffett*, the supreme court recognized that "[t]he failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel." *Id.* Continuing, the supreme court observed that "a court is to determine whether counsel exercised reasonable professional judgment in conducting its investigation based on an assessment of the prevailing professional norms, including a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Id.*

¶20. With respect to the circumstances in *Moffett*, the supreme court found that the defendant's counsel was not ineffective for failing to interview Moffett's family members, or for failing to call those family members as witnesses at Moffett's sentencing hearing, because (1) the decision was "strateg[ic]," and (2) "the affidavits from Moffett's family members provide[d] minimal mitigation evidence." *Id.* at 849 (¶26).

¶21. We find that *Moffett* is distinguishable and that the record before us affirmatively shows that Young received ineffective assistance of counsel of constitutional dimensions in this case. Unlike the circumstances in *Moffett*, we find that in this case there was no conceivable strategic basis for Young's lawyer to fail to present readily available evidence of Young's capacity for rehabilitation at his *Miller* re-sentencing hearing. Further, unlike the failure to present the "minimal mitigation evidence" contained in the *Moffett* affidavits, *id.*, we find that the failure of Young's counsel to present the evidence of his successful completion of rehabilitative and educational programs plainly "had a 'reasonable probability'

11

of affecting the outcome of the case." *Carson*, 212 So. 3d at 27 (¶17) (quoting *Strickland*, 466 U.S. at 695); *see Davis v. State*, 87 So. 3d 465, 471-73 (¶¶31-38) (Miss. 2012) (relying on *Skipper v. South Carolina*, 476 U.S. 1 ,7-8 (1986), for "the proposition that testimony from disinterested prison personnel about an inmate's [good] conduct is highly probative" and finding ineffective assistance of counsel where defendant's counsel failed to uncover and present such evidence at defendant's sentencing hearing). In so finding, we acknowledge that the circuit court's order reflects that the circuit judge expressly found that no evidence of the possibility of rehabilitation existed—even though such evidence was readily available, but was not offered by defense counsel.

¶22. We find that the record affirmatively shows that Young received ineffective assistance of counsel of constitutional dimensions when his lawyer failed to present the readily available evidence of Young's good conduct while in prison at Young's *Miller* re-sentencing hearing, failed to even address Young's capability of rehabilitation in her closing arguments, and failed to rebut the State's argument that no such evidence existed. The evidence that Young's lawyer failed to submit is probative on the fifth *Miller* factor, the possibility of Young's rehabilitation. Although this evidence was attached to Young's PCR motion, the parties agree that it was not admitted into evidence at the hearing, and there is no indication in the record that the circuit court considered this evidence at the *Miller* re-sentencing hearing. On the contrary, the circuit court expressly stated in its *Miller* order that, as to the fifth *Miller* factor, there was "no evidence of the possibility of rehabilitation from the circumstances of the incident or evidence from witnesses." Accordingly, we reverse and

remand this case for a new *Miller* re-sentencing hearing.

¶23.    **REVERSED AND REMANDED.**

    **BARNES, C.J., J. WILSON, P.J., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**