# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00475-COA

**TYWANDA NORTON**                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2023 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | STEVEN KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/08/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     A Neshoba County Circuit Court jury found Tywanda Norton guilty of possession of methamphetamine and possession of a firearm by a felon. Norton was sentenced as a nonviolent habitual offender to serve eight years in the custody of the Mississippi Department of Corrections for possession of methamphetamine and ten years for possession of a firearm by a felon, with the sentences set to run concurrently. The trial court used its discretion to decline imposing the subsequent-drug-offender and firearm enhancements that were included in Norton's initial indictment by a grand jury. Norton now appeals on the basis of ineffective assistance of counsel. We find that the parties did not stipulate to the

record's adequacy, and we decline to address the issue on appeal. Instead, the issue may be pursued in a properly filed motion for post-conviction collateral relief. In this direct appeal from the judgment of conviction and sentencing, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On September 10, 2020, Neshoba County Sheriff Deputies Barry Truhett and Matthew Winstead were on patrol when they observed a vehicle "r[u]n off the road on the right side on the shoulder" and then swerve back, "cross[ing] over the yellow line by a good foot or more." Upon this observation, Truhett activated his blue lights and stopped the vehicle for careless driving. The vehicle that he stopped was a Lincoln Town Car being driven by Norton, who was the only person in the car. Truhett approached the driver's side of the car while Winstead approached the passenger side. "Immediately upon walking up to the window [Truhett] could smell the strong odor of what [he] believed to be marijuana coming from the vehicle." Truhett and Winstead also noticed a .22-caliber rifle in plain sight on the passenger seat with the barrel pointed down toward the floor. Because the rifle was within arm's reach of Norton, Truhett asked Norton to get out of the vehicle and handcuffed him for the officer's safety.

¶3. At this point, Truhett began searching the driver's side of the vehicle, and Winstead began searching the passenger side. Once they began their search, they realized the factory radio in the vehicle had been replaced with an after-market radio, which left about a "two or three inch gap" above the radio. On top of the radio, in the open gap, Winstead spotted a

2

black bag. Winstead gave the bag to Truhett, and when Truhett opened it, he discovered a bag inside with a white crystal-like substance that he believed to be methamphetamine and another bag of a green leafy substance that appeared to be marijuana. The crystal-like substance was sent off to the Mississippi Forensics Laboratory where it was identified as methamphetamine and weighed 2.42 grams. Also inside the black bag was a set of scales, a pack of rolling papers, and a "little scoop that look[ed] like a baby spoon." As their search continued, they found a wallet inside the middle console, which did not contain any identification but did contain $1,042.

¶4. At trial, the court heard testimony from Truhett, Winstead, a narcotics investigator, and a forensics expert who was employed at the Mississippi Forensics Laboratory. After each of these witnesses testified, the State rested, and Norton moved for a directed verdict and renewed previous objections made to the admission of evidence found in the vehicle. The trial court overruled the objection and denied the directed-verdict motion.

¶5. Norton then presented his only witness, Matthew Moore. Moore stated that Norton was a "very good family friend" that he has known for approximately seven or eight years. In July 2020, Moore bought a Lincoln Town Car. Moore only drove the car for about a month before he sold it to Norton and Norton's son. Norton paid Moore $850 for the vehicle, but they signed the title over to Norton's son because the car was for him. Allegedly, while Moore was in possession of the car, he put an after-market radio in it, but once Norton was in possession of the vehicle, he replaced it with a different after-market

3

radio.

¶6.     Because the car had some damage from Moore wrecking the car twice, Norton and his son talked about "getting the car fixed up, replacing the front bumper, replac[ing] the windshield" and "replac[ing] the radiator." Norton worked on cars for a living, and there was a shop on the same property where Moore was living at the time that was connected to the carport of the house. Norton used to live at this same address with Moore but no longer did. Even though he did not live on the property anymore, he would come "back and forth every day" to the shop. This same shop is where Norton left the Lincoln Town Car so he could work on it for his son.

¶7.     Moore testified that he had never seen the .22-caliber rifle, the black bag, the rolling papers, or the scales that were seized from the car at the time of Norton's arrest. He further stated that he did not leave the $1,042 in the console. However, Moore also testified that when Norton was not at the shop, anyone could have accessed the vehicle because it was not locked, and it was parked in an open shed that anyone could have walked up to. After Moore testified, the defense rested.

**STANDARD OF REVIEW**

¶8.     The standard of review for claims of ineffective assistance of counsel is de novo. *Latham v. State*, 299 So. 3d 768, 772 (¶12) (Miss. 2020). "To prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was both deficient and prejudicial." *Id*.

4

**DISCUSSION**

¶9.    "[T]his Court typically preserves ineffective-assistance-of-counsel claims for post-conviction review." *Id*. at 773 (¶16). "It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim." *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002). For this reason, we review ineffective assistance of counsel claims on direct appeal when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)).

¶10.    If "neither party stipulates to the record's adequacy on this point, we must determine whether the record affirmatively shows ineffectiveness of constitutional dimensions." *Payne v. State*, 282 So. 3d 432, 439 (¶22) (Miss. Ct. App. 2019) (citing *Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017)). We may also resolve ineffective assistance of counsel claims on direct appeal when the record affirmatively shows that the claims are without merit. *Welch v. State*, 361 So. 3d 1278, 1281 (¶13) (Miss. 2023) (quoting *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (citing *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss. 2017); M.R.A.P. 22)). But we

5

may only consider "an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." *Dartez v. State*, 177 So. 3d 420, 423 (¶18) (Miss. 2015). If an ineffective assistance of counsel claim is raised on direct appeal and we find the record is incomplete, "the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief (PCR)." *Id*.

¶11.    In this case, after a review of the record, this Court finds that the record does not affirmatively show ineffectiveness of constitutional dimensions, nor do the parties stipulate that the record is adequate. The State stated in its brief that the record "affirmatively shows that Norton's claim lacks merit"; however, this is not a stipulation that the record is adequate. We must not misinterpret or apply our own assumptions to what the State intended its assertion to mean if it was not an explicit stipulation to the adequacy of the record. Therefore, we decline to address this issue, and the issue is preserved to be raised in a PCR motion if Norton desires to do so.

## CONCLUSION

¶12.    After reviewing the record, we decline to address the sole issue of ineffective assistance of counsel, and instead, it may be pursued in a properly filed PCR motion. We affirm Norton's convictions and sentences.

¶13.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**