# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-00883-SCT

*JULIAN HAWKINS a/k/a JULIAN MICHAEL*
*HAWKINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2017 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| TRIAL COURT ATTORNEYS: | ALEXANDER IGNATIEV |
| | JACK LUCIAN DENTON |
| | DECARLO CHAS HOOD |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, VACATED IN PART, AND REMANDED - 10/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., KING AND BEAM, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.    Julian Hawkins was transferred from the Forrest General Hospital Emergency Room,

where he was acting erratically and unusually, to Pine Grove Behavioral Health Center.  At

Pine Grove, Hawkins attacked a nurse and struggled against those who were thereafter holding him down. He was charged with two counts of simple assault on "medical personnel." The jury convicted him on one of those charges, and acquitted him on the second. Hawkins appeals, centering his argument around alleged ineffective assistance of trial counsel. Because this issue cannot be determined from only the facts contained in the record before this Court, this Court affirms Hawkins's conviction, and we allow him the opportunity, if he wishes, to raise the issue in a petition for post-conviction relief. However, because Hawkins was not properly indicted for the crime for which he was sentenced, we vacate his sentence and remand for resentencing under the proper statute.

### FACTS AND PROCEDURAL HISTORY

¶2.     In the fall of 2016, Julian Hawkins traveled from Ann Arbor, Michigan, to Lumberton, Mississippi, to visit his father, Calvin Hart. Hawkins is a Navy veteran, and his youngest brother had recently been killed; Hawkins was "going through issues." During his stay with Hart, Hawkins would talk to himself, knock on the wall, and "act out." On November 15, 2016, Hawkins went to spend the night with his grandfather. Hawkins's grandfather called Hart early in the morning of November 16, 2016, and reported that Hawkins was at the neighbors' house in his underwear banging on their door. Hart called an ambulance, and the ambulance took Hawkins to Forrest General Hospital (Forrest General) in Hattiesburg, where he was admitted to the Emergency Room (ER) at 6:53 a.m.

¶3.     While in the ER, Hawkins displayed erratic and violent behavior. The ER performed a comprehensive drug test, and the only drug that came back positive was cannabinoids, or

2

marijuana. Hawkins tried to leave several times; he attempted to drive away in an ambulance and he attempted to obtain the keys to a police vehicle. When asked why he left, Hawkins responded that "I was going to find the police. Its [sic] a code red situation and yall [sic] needed blood." The licensed professional counselor (LPC) who saw Hawkins at approximately 9:30 a.m. noted that he was confused, had delusions, and was paranoid, stating that Hawkins "was just talking randomly and making no sense, believes that the government is coming to get his father and him." She also noted that he was disoriented and that he was "Psychotic/Paranoid." The LPC noted the positive marijuana test, but ultimately gave a provisional diagnosis of "unspecified mood disorder." The ER ultimately gave Hawkins the drugs Geodon and Ativan via injection to sedate him and then put Hawkins on a psychiatric hold. For some time after receiving the medicine, Hawkins was resting comfortably. However, at approximately 4:15 p.m., Hawkins attempted to leave again, but was brought back by "public safety" since he was under a psychiatric hold. Later, he threatened to throw a cup of urine on an ER tech if the ER tech came in Hawkins's room. The ER doctor ultimately diagnosed Hawkins with "substance induced psychosis" and sent him to Pine Grove Behavioral Health Center (Pine Grove) at approximately 5:30 p.m. on November 16, 2016.

¶4. Hawkins arrived at Pine Grove, and at around 6:20 p.m., he jumped over a barrier to the nurse's station, wrapped a towel around the neck of nurse Holly Bounds, and began choking her. Bounds testified that she believed that Hawkins was trying to kill her. Several Pine Grove employees quickly tackled Hawkins to the ground and held him there for

approximately ten minutes until police arrived. Hawkins continued to struggle, despite the fact that, at some point, about eight employees were on top of him holding him down. During this struggle, Hawkins twice bit nurse Illa Mills as she was attempting to prevent him from biting the employee who was the primary person holding Hawkins down. Mills testified that she was concerned about the transmission of diseases from the bites.

¶5. Hawkins was indicted for two counts of simple assault on "medical personnel" under Mississippi Code Section 97-3-7(1)(a)(iii) (Rev. 2014).[1] It charged that Hawkins did "unlawfully, feloniously and willfully attempt by physical menace to put" each of the nurses "in fear of serious bodily harm" while each was a nurse acting within the scope of her duty and office.

¶6. At trial, the defense attempted to argue that the State could not prove the intent element because the defendant was not in his right mind and/or because his state of mind was caused by the drugs given to him involuntarily in the ER. The defense did not utilize any expert opinion, but did elicit from one of the nurses that the drugs Hawkins was given may cause confusion. The State repeatedly emphasized that the defendant had not raised an insanity defense, stating in its cross-examination of Hawkins that "Your attorney didn't think that was justified in your circumstances given your medical history that you have any significant medical history with psychosis. That's not what they diagnosed you with, okay,

---

[1]The indictment incorrectly charges Hawkins under Section "97-3-7(1)(C)." Section 97-3-7 was reorganized in 2012, and Section 97-3-7(1)(c) has not existed since that time. The corresponding reorganized sections somewhat confusingly encompass Sections 97-3-7(1)(a)(iii), 97-3-7(1)(b), and 97-3-7(14). Sections 97-3-7(1)(a)(iii) and 97-3-7(1)(b) carry different sentences.

so let's leave that to your attorney 'cause that's not an issue. He didn't file it. Okay?" In closing arguments, the State argued

> Now, the other argument that the Defense has made is some type of mental condition, some type of diminished capacity, so he didn't really know what he was doing. Well, here's the problem of that. That's the old insanity defense. That's an affirmative defense. And if they were going to pursue that defense, they would have had to declare it way before we got to where we are now. I think you have seen how strenuously they argued. If there was any real question as to his mental capacity, don't you believe that they would have demanded a psychological evaluation? Then there would have been an expert here to testify about, you know, whether he was hearing things or seeing things. Well, you don't have any evidence to that, because they didn't pursue that defense. They just simply kind of alluded to it throughout the trial. You know, the medicine made him crazy or, you know, some trauma in his life made him go through a downtime. It's not a defense that's before you. There's no evidence to support it, so it doesn't go into the deliberations room. You deliberate the evidence, and there is no evidence to that, so it can't be deliberated.

Yet, when addressing why Hawkins was being held involuntarily, the State insinuated that Hawkins was "crazy," stating,

> Why in the world would a medical facility have someone be brought in by a family member who is having some issues and they let them walk out the door? If they walk out the door and cause injuries to anybody, who's gonna get sued? If they walk out the door when he's having these - - as he said, he's seeing these visions. When he sees this vision on somebody on the street, he goes and kills them. If the hospital actually lets him out the door when a family member said he needed some assistance, if a doctor actually does that, what do you think happens? . . . Why did you let this crazy person go when you know he's crazy? So what could they do? Send him to what his father wanted - - help.

The State also emphasized its belief that, due to the positive cannabinoids test, Hawkins assaulted the nurses because he was voluntarily intoxicated, even going so far as to essentially testify about the biochemical effects of marijuana while cross-examining

5

Hawkins. The prosecutor asked Hawkins if he had smoked marijuana, and he stated that he had when he had been in Michigan but that he had not during his time in Mississippi. The prosecutor asked the question again, and upon Hawkins's denial that he had smoked marijuana while in Mississippi, the prosecutor stated "Cause it - - it was pretty strong in your system and you had been out of Michigan for, like, two weeks." The prosecutor went on to testify that "[t]he lower [verbatim] that you stay away from marijuana, the lower the levels are." The prosecutor then opined, "The levels are pretty high." The State gave no medical basis for these statements, and the defense did not object to them. In closing argument, the State emphasized that, after Hawkins had been in the hospital for twelve hours before the attack, he was still intoxicated from the marijuana in his system, and the much more recent drugs given him by the ER had no effect. The State maintained that "even if he was acting out because of some type of drug that he took, that doesn't get him off the hook for what he did . . . . even if he was hearing things and seeing things, it was because he took something voluntarily that made him see and hear things." The State further argued,

> So what this issue - - what this was caused by why he was here - - got hold of some marijuana that THC, got a hold of some spice, and did something he shouldn't have done. He was freaking out, smoking. . . . But guess what? That's not a defense. That's voluntary intoxication. The law says you can't claim.

The State claimed, without producing medical expert testimony about the effects of these drugs, that

> The only evidence you have before you is what the doctor says is drugs. Marijuana is there. THC. Whether it comes from marijuana or comes from spice, the results are the same. That's why people say you've got to know where your marijuana comes from. You've got to know where you're getting

6

it. 'Cause if you get some that's got spice in it, you're gonna go crazy. That's reality. . . . This case that this defendant voluntarily intoxicated himself.

¶7. A jury instruction was given that voluntary intoxication was not a defense to the crimes. The jury returned a verdict of guilty for Count I for the attack on Holly Bounds and not guilty for Count II for the attack on Illa Mills. The court sentenced Hawkins, apparently under Section 97-3-7(1)(b) (Rev. 2014), a subsection not mentioned in Hawkins's indictment, to five years in custody and to a fine of $2500. Hawkins appeals, arguing that his trial counsel was ineffective. He argues that trial counsel should have requested expert assistance, specifically an expert psychiatrist, to assist with the defense, because substantial evidence had supported the defenses of insanity and involuntary intoxication.

## ANALYSIS

### 1. *Indictment and Sentence*

¶8. Hawkins does not challenge his indictment or sentence on appeal. However, this Court may address plain errors it identifies. Miss. R. App. P. 28(a)(3); ***Thomas v. State***, 126 So. 3d 877, 879 (Miss. 2013). The right to notice of criminal charges is embedded in both our state and federal constitutions. U.S. Const. amend. VI; Miss. Const. art. 3, § 26; Miss. Const. art. 3, § 27. "An indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." ***Thomas***, 126 So. 3d at 879. If the facts alleged in the indictment "do not constitute [] an offense within the terms and meaning of the law or laws on which the accusation is based . . . the indictment is insufficient." ***Id.*** Hawkins was indicted under nonexistent Section "97-3-7(C)" and sentenced under Section 97-3-7(1)(b).

¶9. Hawkins was on notice that the indictment charged him under Section 97-3-

7

7(1)(a)(iii), because the indictment properly and thoroughly tracked the language in this subsection. The punishment for a conviction under Section 97-3-7(1)(a)(iii) is "a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both." Miss. Code Ann. § 97-3-7(1)(a)(iii). Section 97-3-7(1)(b), the language of which the indictment did not track, provides that "a person convicted of simple assault upon any of the persons listed in subsection (14) of this section under the circumstances enumerated . . . shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both." Miss. Code Ann. § 97-3-7(1)(b). Subsection 14 provides that "[a]ssault upon any of the following listed persons is an aggravating circumstance *for charging under subsections (1)(b)* and (2)(b) . . . : "*emergency* medical personnel . . . ." Miss. Code Ann. § 97-3-7(14) (Supp. 2016) (emphases added). Notably, Hawkins's indictment did not point specifically to Section 97-3-7(1)(b), nor did it charge him with simple assault on emergency medical personnel; it used the more general term "medical personnel."

¶10. In *Thomas*, a unanimous Court noted that the charged crime, felon in possession of a prohibited weapon, is a statutory crime; thus, an indictment must charge a defendant with all essential elements of that crime. *Thomas*, 126 So. 3d at 879. The statute criminalized felons possessing only four specific types of knife, yet Thomas's indictment charged him only with possessing "a knife." *Id.* at 878-80. Thomas could have legally possessed "vast varieties" of knives. *Id.* at 879. Thus, the Court found that the failure to specify the type of knife Thomas was in possession of amounted to a failure to charge Thomas with an essential

8

element of the crime.  *Id.* at 880.

¶11.    Under Section 97-3-7(1)(a), the Legislature criminalized simple assault against any person. Under Sections 97-3-7(1)(b) and (14), the Legislature specified that attacking certain specified categories of persons was an aggravating circumstance that was punishable by a greater sentence.  Among those categories of persons designated by the Legislature is "emergency medical personnel."  Had the Legislature desired to expand this aggravating circumstance to all medical personnel, it certainly could have, but the Legislature specifically restricted the aggravating circumstance to only emergency medical personnel.  A simple assault on non-emergency medical personnel has not been designated by the Legislature as necessitating the greater sentence.  Non-emergency medical personnel are not a category of persons for which assault requires an aggravating circumstance and an increased sentence. Hawkins's indictment did not track the language of Sections 97-3-7(1)(b) or (14), impermissibly broadening the scope of what the Legislature statutorily deemed an aggravating circumstance.[2]  Nor did the indictment specifically cite Section 97-3-7(1)(b) or (14).  As such, Hawkins was not on notice that he would be convicted and sentenced under Section 97-3-7(1)(b), and the sentence under that provision is improper.  Hawkins was on notice, however, that he was being tried for simple assault under Section 97-3-7(1)(a)(iii). We consequently vacate Hawkins's sentence and remand the case for resentencing under Section 97-3-7(1)(a).

---

[2]It is also of note that the nurse Hawkins assaulted was working at a Behavioral Health Center and was not in any sort of Emergency Room, Emergency Department, or ambulance.

9

### 2.     *Ineffective Assistance of Counsel*

¶12.    Hawkins argues that without an expert the defense was unable to even determine whether the insanity defense was viable. Both parties argue that the record is sufficient for a determination of whether counsel was ineffective. "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Dartez v. State*, 177 So. 3d 420, 423 (Miss. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Thus, the defendant must prove that counsel's performance was both deficient and prejudicial. *Dartez*, 177 So. 3d at 423. Normally, ineffective assistance of counsel claims should be brought during post-conviction proceedings. *Id.* at 422-23. If insufficient evidence and/or information exists in the trial record for the appellate court to adequately address the claim, this Court should deny relief while preserving the defendant's right to argue ineffective assistance of counsel through a petition for post conviction relief (PCR). *Id.* at 423. We may address an ineffective assistance of counsel claim on direct appeal only if the "issues are based on facts fully apparent from the record." *Id.*

¶13.    It is clear from the record that Hawkins's mental state and/or involuntary intoxication were at issue. But without any expert opinions in the record, it is impossible to determine deficiency and/or prejudice. This Court cannot know whether an expert would pronounce Hawkins insane or sane at the time of the offense. Thus, it is impossible to ascertain whether counsel was deficient for not consulting such an expert, and it is impossible to know if the

10

failure to consult an expert prejudiced Hawkins. Similarly, without expert opinion regarding drugs, it is impossible to ascertain whether any drugs taken or given could have caused Hawkins's mental state to be altered. The State argued heavily that Hawkins was voluntarily intoxicated, and the defense did not put on an expert to counter the State's argument about what Hawkins's positive marijuana test could mean, what the half-life is for cannabinoid intoxication, and what side effects, if any, might be experienced by a marijuana user. No expert testified about the drugs Hawkins was given involuntarily.[3] Nothing in the record illustrates the side effects of those drugs, the likelihood of any adverse side effects, the interaction, if any, between those drugs and marijuana, or the half-life of those drugs and how long they remain in the system. An expert may have testified that those drugs would have been completely out of Hawkins's system at the time of the attack, or an expert may have testified that those drugs have a chance of causing mental issues and were likely to have done so in this case. Without any expert opinion either way on these issues, it is impossible to determine either deficiency or prejudice.

¶14.    In *Dartez*, this Court faced a similar issue: the defendant had argued that counsel was ineffective for failing to raise an insanity defense. *Dartez*, 177 So. 3d at 422. This Court found that the issue involved facts not fully apparent from the record. *Id.* at 423. Similarly, the issue before this Court in the case at hand cannot be resolved either way without facts that are not fully apparent from the trial record, namely expert opinions one way or the other.

---

[3]Unquestionably, he received these drugs well *after* any alleged cannabinoid usage.

This issue is therefore inappropriate to address on direct appeal.[4] This Court affirms Hawkins's conviction. We preserve his ability to raise ineffective assistance of counsel through a petition for post-conviction relief.

**CONCLUSION**

¶15.   Because Hawkins's ineffective assistance of counsel claim cannot be determined without facts outside the record before this Court, we affirm Hawkins's simple assault conviction, and we allow him to assert this claim through a petition for post-conviction relief. However, because Hawkins was improperly sentenced under a subsection not properly charged in his indictment, we vacate his sentence and remand the case for resentencing under Section 97-3-7(1)(a).

¶16.   **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

[4]Hawkins also argues on appeal that his conviction is against the overwhelming weight of the evidence because he was clearly either insane and/or involuntarily intoxicated. As discussed, no expert testified regarding these issues, and whether Hawkins was insane and/or involuntarily intoxicated is not readily apparent from the record. Thus, this claim is without merit.