# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00180-COA

**CYNTHIA BURFORD A/K/A CYNTHIA LAURINE BURFORD**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2018 |
| TRIAL JUDGE: | HON. CHARLES W. WRIGHT JR. |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ASHLEY L. SULSER MATTHEW W. WALTON |
| DISTRICT ATTORNEY: | KASSIE ANN COLEMAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/25/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT**:

¶1.     Cynthia Burford appeals her conviction and sentence for burglary of a dwelling, during which she partially accompanied her boyfriend, Casey Dunnigan. Burford asserts four issues on appeal, including insufficiency of the evidence, involuntariness of the confession, error in an evidentiary ruling, and court-ordered excessive or illegal restitution. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 22, 2017, the Clarke County Sheriff's Department dispatched Eric O'Neil to investigate a burglary at Kaytelyn Smith's residence. When he arrived, he noticed that "the side door to the house was open." Smith approached O'Neil and stated that she was in the process of remodeling her home. She also explained that fifty items relating to the remodeling were missing, and she provided O'Neil with a list of those items. Smith guided O'Neil through her home, as he photographed each room. After processing the scene, O'Neil concluded that the point of entry was through the home's side door. According to Smith, at the time she left her home, she had secured that door with a clasp and string.[1] Smith also stated that she used the porch door (not the side door) when she returned home.

¶3. Two days later, Deputy Hank Gandy of the Clarke County Sheriff's Department was involved in a car chase with a "red/maroon" Chevrolet Impala, not far from Smith's residence. The chase continued down a county road and ended when the Impala wrecked into a chain-linked fence on the property of Ann Robinson (Dunnigan's mother). By the time Deputy Gandy reached the scene of the accident, two occupants had absconded on foot. Deputy Gandy searched the vehicle and discovered certain items inside it. He also recovered identification cards belonging to Dunnigan (Burford's boyfriend). O'Neil arrived and ran the Impala's license tag. The tag was registered to Burford's grandfather. Smith, who lived "right down the road," was called, and she identified some of the items from the car as the missing property from the alleged February 22 burglary.

¶4. The Clarke County Sheriff's Department received information that Dunnigan and

---

[1] O'Neil testified at trial that "[t]he door had a clasp lock where you would normally put a lock, and they had put a clasp and string to hold the door secure."

Burford were residing in a make-shift house behind Robinson's house. After receiving permission from the "property caretaker and owner," the officers searched in and around Burford and Dunnigan's home. They retrieved additional stolen items relating to the February 22 burglary.

¶5. On September 20, 2017, a grand jury indicted Burford and Dunnigan for one count of burglary of a dwelling under Mississippi Code Annotated section 97-17-23 (Rev. 2014), and, in the alternative, one count of grand larceny under Mississippi Code Annotated section 97-17-41 (Rev. 2014). Burford was tried separately on December 18-19, 2018, with the State presenting two witnesses and Burford's written and recorded statements of Burford. Investigator O'Neil testified to the facts above and about the day following Burford's arrest. O'Neil testified that Burford waived her *Miranda* rights after she was arrested.[2] He then interrogated her, recording it on two DVD discs. O'Neil testified that Burford discussed the February 22 burglary and the February 24 car chase. He also testified that Burford signed a written witness statement, reiterating the verbal confession to the crime of burglary. Burford's signed witness statement was admitted into evidence without objection as Exhibit 44. Burford's recorded confession was also admitted into evidence without objection as Exhibits 45 and 46.[3] After the exhibits were admitted into evidence, the State played Exhibit

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966). The *Miranda* waiver form was admitted into evidence without objection as Exhibit 43.

[3] The record shows that the confession was recorded on two separate discs, with Part 1 on Exhibit 45 and Part 2 on Exhibit 46. The attorney for the State explained, "This interview was one long interview. It was put on two dis[cs] because the memory of [one] dis[c] could not contain the whole interview. There is no break in the interview. We just had to add it to an extra dis[c]."

45 for the jury. At the conclusion of Exhibit 45, the State published Exhibit 46, or Part 2 of Burford's confession, to the jury. As it played, the State realized that Exhibit 46 was just a duplicate of Exhibit 45. The State then moved to substitute Exhibit 46 with a third disc, claiming it contained Part 2 of Burford's confession. The court allowed the State to withdraw the duplicated disc (Exhibit 46) and offer the third disc as Exhibit 47. As it was being offered, Burford objected. Burford argued that her confessions were involuntary. The circuit court overruled Burford's objection. The State published Exhibit 47 and it was played for the jury.

¶6. Smith was the second witness. She testified about events that occurred on February 22, 2017. According to Smith, she returned home on February 22 and realized that a skill saw and extension cord were missing. Upon further investigation, Smith stated she noticed that "probably [fifty] or more" items were missing from her home. She testified that the missing items included tools, building materials, cleaning supplies, an air conditioning unit, "general remodeling stuff," and other personal property. Furthermore, Smith testified that she was living at the home despite the remodeling. According to Smith, she resided there "three or four" nights a week and considered the home her "primary house."

¶7. Following Smith's testimony, the State rested its case-in-chief, and Burford moved for a directed verdict, arguing the State had failed to present sufficient evidence to convict her of burglary of a dwelling. The motion was denied.

¶8. In her case-in-chief, Burford testified in her own defense and called no additional witnesses. Burford testified that she met Dunnigan in September 2016 (around five months

4

before the alleged burglary). She then testified about the events that occurred on February 22. According to Burford, she and Dunnigan got out of the house and "went for a ride" in a Chevrolet Impala. They drove around before stopping at Smith's house. Burford knew Dunnigan's mother previously lived in Smith's house, but she did not know what Dunnigan was doing at the time he exited the vehicle. According to Burford, she assumed Dunnigan was getting out to "use the bathroom or something." Burford testified that Dunnigan entered Smith's home several times using the side door. She testified that each time Dunnigan returned to vehicle, he was "carrying stuff out of the house." She then admitted that she had helped Dunnigan "load the stuff" into the vehicle.

¶9.     Following her testimony, Burford rested and renewed her motion for a directed verdict. The court denied the motion. After deliberation, the jury found Burford guilty of burglary of a dwelling. Burford was sentenced to fifteen years to be served in the custody of the Mississippi Department of Corrections, and she was ordered to pay a $5,000 fine, $5,000 in restitution, and $430.50 in court cost. After sentencing, Burford filed a "Motion For Judgment Notwithstanding The Verdict Or In The Alternative, For A New Trial," arguing that her confession was not knowingly, intelligently, and voluntarily made. The court denied the motion. Burford then filed the instant notice of appeal.

**DISCUSSION**

¶10.     Burford claims the following on appeal: (I) the evidence was insufficient to support a burglary conviction; (II) her confessions were involuntary; (III) the circuit court abused its discretion by excluding testimony; and (IV) the circuit court erred by ordering restitution. We

address each issue below.

## I. Whether the circuit court erred by denying Burford's motion for a judgment notwithstanding the verdict.

¶11. Burford first argues the State failed to prove beyond a reasonable doubt the essential elements of dwelling-house burglary. "The sufficiency of the evidence is challenged with a motion for a directed verdict, a request for a peremptory instruction, or a motion for judgment notwithstanding the verdict (JNOV)." *Pace v. State*, 242 So. 3d 107, 117 (¶24) (Miss. 2018). "In reviewing a challenge to the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prosecution and accept all evidence supporting the verdict as true. *Bradford v. State*, 102 So. 3d 312, 314 (¶7) (Miss. Ct. App. 2012) (citing *Ellis v. State*, 778 So. 2d 114, 117 (¶7) (Miss. 2000)). We give the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Seeling v. State*, 844 So. 2d 439, 443 (¶8) (Miss. 2003). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Warren v. State*, 187 So. 3d 616, 627 (¶30) (Miss. 2016).

¶12. The crime of dwelling-house burglary is defined as follows:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

Miss. Code Ann. § 97-17-23(1). In other words, "[t]he elements of burglary of a dwelling

6

are (1) unlawful breaking and entering, and (2) intent to commit a crime therein." *Ward v. State*, 285 So. 3d 136, 140 (¶16) (Miss. 2019) (internal quotation mark omitted) (quoting *Jackson v. State*, 90 So. 3d 597, 604 (¶27) (Miss. 2012)). At trial, the jury was instructed on burglary of a dwelling and grand larceny. As to burglary, the jury was given the definitions of "breaking," "entering," and "dwelling."

### A. Breaking and Entering

¶13. Burford argues the State failed to prove that Dunnigan committed a breaking. "It is well-established law in Mississippi that a breaking is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or rasing a latch." *Ladd v. State*, 87 So. 3d 1108, 1114 (¶19) (Miss. Ct. App. 2012) (quoting *Davis v. State*, 910 So. 2d 1228, 1231 (¶8) (Miss. Ct. App. 2005)). In support of this contention, Burford cites to *Ladd* and two other cases.

¶14. In *Clanton v. State*, 52 So. 2d 349, 350 (Miss. 1951), our supreme court reversed a jury verdict, finding the trial court impermissibly instructed the jury as to burglary. According to the court, there was no evidence presented at trial showing that the point of entry (a window) was closed on night the crime was committed. *Id.* In *Ladd*, 87 So. 3d at 1113 (¶23), this Court reversed the trial court's judgment for burglary and remanded the case for sentencing on the charge of trespass after holding that the act of walking through an "open garage door d[id] not satisfy the necessary 'breaking' element to warrant a charge for burglary of a dwelling." Similarly, in *Foster v. State*, 281 So. 3d 229, 233 (¶12) (Miss. Ct. App. 2019), this Court reversed a burglary conviction and rendered judgment, finding the

7

State failed to present evidence concerning the condition of the dwelling's back door on the date of the alleged burglary. In *Foster*, no investigating officers visited the dwelling, and the defendant asserted in his defense that he entered an "open" door. *Id.* at 235 (¶24).

¶15. Unlike *Clanton*, *Ladd*, and *Foster*, the instant case consists of evidence showing that the side door at Smith's house was closed and secured at the time the house was entered and the items stolen. Smith testified on direct examination that the side door was "pulled to and had a rope securing it" at the time she left her house on February 22. She also testified that when she returned home and discovered that items were missing, she entered through the porch door, not the side door. O'Neil testified that when began his investigation, he observed the side door "standing open" and unsecured from the clasp. Therefore, it is clear that a reasonable juror could infer that a breaking occurred beyond a reasonable doubt. *Warren*, 187 So. 3d at 627 (¶30).

### B. Dwelling House

¶16. Burford contends the State failed to prove beyond a reasonable doubt that the home was a "dwelling." Specifically, she claims that because Smith did not store her clothes or personal effects in the home, the house did not constitute a "dwelling" within the meaning of the burglary statute. In support, Smith points to testimony showing that Smith kept clothes in her car, and she argues that the home was a "construction site."

¶17. Under Mississippi Code Annotated section 97-17-31 (Rev. 2014), a "dwelling house" is defined as "[e]very building joined to, immediately connected with, or being part of the dwelling house, shall be deemed the dwelling house." Our common law provides that "[t]he

term 'dwelling house' is defined as 'a place where people dwell or reside.'" *Taylor v. State*, 109 So. 3d 589, 594 (¶11) (Miss. Ct. App. 2013) (quoting *Robinson v. State*, 364 So. 2d 1131, 1134 (Miss. 1978)). In determining whether a building is a "dwelling house," it is accepted that "[t]he intention of the dweller is the material consideration . . ." *Id.*

¶18. In her brief before this Court, Burford relies upon *Woods v. State*, 191 So. 283, 284 (Miss. 1939), a case in which the house in question was intended to be a dwelling house but was recently built and not yet occupied by the owners. Burford argues that the remodeling of Smith's home is analogous to the newly constructed house in *Woods*. We disagree.

¶19. Smith used her home on a regular basis for "several months" prior to the burglary. In fact, testimony shows that she resided in her home on "three or four" nights of the week. Furthermore, the record reveals that at the very least, the home contained a bed, bed dressings, a family heirloom, a toilet, and other necessities. Smith's own testimony establishes that there was running water and electricity in the home. And she testified that she had the ability to bathe in her home. Smith also testified that she considered the home her "primary house" and that her intent was to remodel the home and to continue to live there. *See Washington v. State*, 753 So. 2d 475, 477 (¶9) (Miss. Ct. App. 1999) ("The Mississippi Supreme Court has held that 'a person may simultaneously have two dwelling subject to burglary and sometimes reside with his family in one and sometimes in the other.'" (quoting *Gillum v. State*, 468 So. 2d 856, 859 (Miss. 1985))). Finally, contrary to Burford's assertions, that a home was being remodeled at the time of the burglary does not prevent the home from being classified as a dwelling.

¶20. "A doubt as to one's intention to return coupled with long-continued absence may be sufficient to destroy the character of a house as a dwelling." *Id.* at 478 (¶12). As mentioned above, Smith lived in the home on a regular basis, and there is evidence in the record that supports a finding that Smith bore the intent to continue to do so. Her home was a dwelling as contemplated by the burglary statute.

### C. Intent to Commit a Crime Therein

¶21. We next address whether the State failed to prove the second element of dwelling-house burglary. Burford claims that there was no proof that she had the prior intent to steal before Dunnigan entered the home.

¶22. "Intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. [The] [d]efendant's intention is manifested largely by this things [s]he does." *Dixon v. State*, 240 So. 2d 289, 290 (Miss. 1970) (citing *Newburn v. State*, 205 So. 2d 260, 265 (Miss. 1967)); *see also Moore v. State*, 344 So. 2d 731, 735 (Miss. 1977).

¶23. Here, Burford testified that she was present at the time of the burglary. She also testified that she assisted Dunnigan commit the crime by loading stolen items into the vehicle. In addition, the testimony shows that Burford fled from the police after the crime occurred. During their burglary investigation, officers of the Clarke County Sheriff's Department recovered stolen items from both the vehicle and inside Burford and Dunnigan's residence. *See Weaver v. State*, 481 So. 2d 832, 834 (Miss. 1985) (finding that the unexplained possession of recently stolen property is prima facie evidence of burglary).

¶24.    "Felonious intent is an issue of fact which falls within the exclusive province of the jury." *Jackson v. State*, 90 So. 3d 597, 604 (¶27) (Miss. 2012) (citing *Croft v. State*, 992 So. 2d 1151, 1158 (¶28) (Miss. 2008)). "Intent may be proved by circumstantial evidence." *Franklin v. State*, 676 So. 2d 287, 289 (Miss. 1996). At trial, the jury heard testimony from the witnesses and reviewed the admitted evidence. The jury was instructed on both burglary of a dwelling and grand larceny. After weighing the evidence and the credibility of the witnesses, the jury convicted Burford of dwelling-house burglary. We find that there is sufficient evidence demonstrating that Burford bore the requisite intent to commit dwelling-house burglary.

## II.    Whether the circuit court erred by admitting Burford's written and recorded confessions.

¶25.    Burford's second argument relates to the voluntariness of her confession. She argues the circuit court erred by not holding an *Agee* hearing.[4] The State contends that this assignment of error is procedurally barred because Burford failed to timely file a motion to suppress. In the alternative, Burford claims ineffective assistance of counsel. In short, we find under the circumstances that the confessions were properly admitted and that the record is insufficient to determine whether Burford received the ineffective assistance of counsel.

¶26.    We begin by recapitulating the facts. Prior to trial, Burford's counsel indicated that she intended to file a motion to suppress Burford's statements made to law enforcement. After conducting a review of Burford's statements, however, Burford's counsel did not to file a motion to suppress.

---

[4] *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966).

11

¶27. At trial, O'Neil testified that he interviewed Burford on the day she was arrested. According to O'Neil, he read Burford her rights and Burford signed a *Miranda* waiver. The waiver was admitted into evidence without objection. O'Neil testified that after the waiver was signed, he recorded her interview, and Burford signed a written witness statement. O'Neil testified, "[Burford] admitted on the recording and in the statement that she was part of the crime." Shortly thereafter, the State moved to admit Exhibit 44 (Burford's signed witness statement) into evidence. It was admitted without objection. The statement read:

> On February 21st or 22nd, 2017[,] myself, Cynthia Burford[,] and Casey Dun[n]igan went to [] Quitman and broke into a house and took stuff out of the house and shed. We took it to . . . where we were living and hid it in the white shed that is on the side house. Casey went back to the shed and moved some stuff. Ann (Casey's mom) fed us while we were there. Jeremy and Angie Dun[n]igan took us to Natchez[,] MS and that is where we were caught.

¶28. After Burford's signed witness statement was admitted into evidence without objection, the State proceeded to question O'Neil about Burford's recorded confession. O'Neil identified that he recorded her verbal confession on two discs (because one disc did not contain enough storage to save the entire recording). The State then moved to admit Exhibits 45 and 46 (Burford's recorded confession) into evidence. The discs were admitted without objection.

¶29. Following a brief conversation, the State played the first part of Burford's recorded confession, or Exhibit 45, for the jury. The video depicts Burford's *Miranda* waiver. It also contains Burford's confession in relation to the February 24 car chase. At the end of the video, the State placed Exhibit 46 into the DVD player.

¶30. Not long after it started playing, the State realized that Exhibit 46 was a duplicate of

12

Exhibit 45. The State requested to withdraw Exhibit 46 and to offer another disc, which was later marked as Exhibit 47. At this point, Burford objected, arguing her confessions were involuntary. The circuit court overruled Burford's objection. The trial transcript provides, in relevant part:

| | |
|---|---|
| [Burford:] | Judge, at this point, I move to object to the entry of the second video based on the fact that they offered her a lower bond, threatened her with a higher bond, threatened that her kids would be taken away forever[,] and threatened her with 25 years to serve in the pen. |
| | I don't think it's a voluntary statement, and for that reason I would move to – to dismiss the second part of the interview or to make it – or to object to its entry into the record. |
| THE COURT: | I have reviewed the file. I saw no motion to suppress any statement of the defendant. Did you file a motion? |
| [Burford:] | No, Your Honor. |
| THE COURT: | And when those two parts were offered as exhibits, you had no objection. |
| [Burford:] | That's correct, Your Honor. |
| THE COURT: | And now, after they have been played, you are bringing up an objection to the second part but not the first part? |
| [Burford:] | That's correct, Your Honor. |
| THE COURT: | Did you have the video prior to trial? |
| [Burford:] | Yes, sir. I got them last week. |
| THE COURT: | Did you review them? |
| [Burford:] | Yes, sir. |

13

| | |
|---|---|
| THE COURT: | And did you review part 2? |
| [Burford:] | Yes, sir. |
| THE COURT: | Then all the issues that you are describing to the court were part of your pretrial preparation prior to this trial? |
| [Burford:] | That's correct. |
| THE COURT: | Then your objection is noted and overruled. |

¶31.    On appeal, Burford argues the circuit court committed reversible error by not holding a voluntariness hearing outside the presence of the jury. The State contends that this assignment of error is procedurally barred because Burford failed to timely file a motion to suppress.  "When an objection is made to the introduction of [a] confession, the accused is entitled to a preliminary hearing conducted outside the presence of the jury on the question of the admissibility of the confession."  *Agee*, 185 So. 2d at 673.  The voluntariness of the confession may also be raised for the first time at trial.  *See Cox v. State*, 586 So. 2d 761, 763 (Miss. 1991).

¶32.    However, we find that the present case is distinguished from *Agee* and its progeny because at the time Burford objected, the confessions were already admitted into evidence. To reiterate, Burford's signed witness statement (Exhibit 44) had already been entered into evidence at the time Burford objected.  In addition, the State had already discussed the substance of Burford's written confession before the jury.  Furthermore, the record shows that the State stated it was entering Burford's entire recorded confession into evidence at the time it presented the circuit court Exhibits 45 and 46, to which there was no objection.  We note the following exchange:

14

[State:]    Detective O'Neil, I think – I think we had covered the Miranda waiver, and I asked you whether or not there was a recorded – a recording of Ms. Burford's interview or interrogation y'all. What was your response?

[O'Neil:]   Yes, sir, there was a recording.

[State:]    Okay. Have you provided it to us?

[O'Neil:]   Yes, sir, I have.

[State:]    And have you provided it to the defense?

[O'Neil:]   Yes, sir.

. . . .

[State:]    Did you bring the dis[c] with you?

[O'Neil:]   Yes, sir. I have the original dis[c].

. . . .

[State:]    Okay.  So – all right. Deputy O'Neil, you just handed me these two dis[c]s.  What's on the dis[c]s?

[O'Neil:]   One is going to be the interview with Ms. Burford – those two – and this would be an interview with Mr. Dunnigan.

[State:]    Now, just with regard to Ms. Burford, how can you tell that this is the interview tape that you made from her – her interview?

[O'Neil:]   Because that's my handwriting with the case number on it.

[State:]    And you have had an opportunity to view these videos –

[O'Neil:]   Yes, sir.

[State:]    – to confirm that they're consistent with your interrogation of her?

[O'Neil:]   Yes, sir.

15

[State]:	At this time, Your Honor, may I have these marked?

THE COURT:	Which ones are you requesting?

[State:]	Ms. Burford's.

THE COURT:	Just Ms. Burford's?

[State:]	Just Ms. Burford's.

THE COURT:	Those are two dis[c]s?

[State:]	Well, Your Honor, there are two dis[c]s. It's in two parts. Part of it is around 35 minutes long; the other is about 25 minutes long. And then Mr. Dunnigan's was a separate interview, Your Honor.

THE COURT:	Okay. Give that back to the detective and – or investigator. And are you asking these two dis[c]s to be marked?

[State:]	Yes, sir.

THE COURT:	And admitted?

[State:]	And admitted.

THE COURT:	What says the defendant?

[Burford:]	No objection.

THE COURT:	Let them be marked as Exhibit 45 and 46.

. . . .

(EXHIBIT NUMBERS 45-46 WERE MARKED AND RECEIVED INTO EVIDENCE.)

¶33.	Upon review, we find that this issue is procedurally barred. *Archer v. State*, 118 So. 3d 612, 620 (¶22) (Miss. Ct. App. 2012) (citing *Caston v. State*, 823 So. 473, 503 (¶102)

16

(Miss. 2002) ("An appellate court is under no obligation to review an assignment of error when an objection was not made or when an objection was untimely.")). But even if Burford had preserved this issue for appeal, it would not avail her, as there was testimony or other evidence corroborating the State's case. As a reminder, Burford's signed witness statement was entered into evidence at the time Burford objected to Exhibit 47. The witness statement explicitly stated, "On February 21st or 22nd, 2017[,] myself, Cynthia Burford[,] and Casey Dun[n]igan went to . . . Quitman and broke into a house and took stuff out of the house and shed." Further, the jury heard testimony from O'Neil and Smith concerning the February 24 car chase and told that stolen items were recovered from Burford's vehicle and residence. Thus, this issue is also without merit.

¶34. Turning to Burford's alternative argument, she argues her trial counsel's assistance was constitutionally ineffective for failing to exclude her written or recorded confessions. In regard to ineffective-assistance-of-counsel claims, our supreme court recently explained the following:

> To prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was both deficient and prejudicial. *Hawkins v. State*, 255 So. 3d 1264, 1270 [(¶12)] (Miss. 2018). Ineffective-assistance-of-counsel claims should generally be brought during post-conviction proceedings. *Id.* If insufficient evidence and/or information exists in the trial record for the appellate court to adequately address the claim, this Court should deny relief while preserving the defendant's right to argue ineffective assistance of counsel through a petition for post-conviction relief (PCR). *Id.* This Court may only address such claims on direct appeal if the facts regarding the issues raised are fully apparent from the record. *Id.*

*Stevenson v. State*, 283 So. 3d 697, 700 (¶10) (Miss. 2019) (internal quotation marks omitted). The State does not stipulate that the record is adequate to address this issue on

direct appeal. *See Read v. State*, 430 So. 2d 832, 841 (Miss. 1983) (The Court may also address ineffectiveness issues when "the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed.").

¶35. Whether Burford's trial counsel should have challenged the voluntariness of Burford's confessions involves facts not fully apparent from the record before us. Because of this, we are unable to properly address Burford's ineffective-assistance-of-counsel claim on direct appeal. If she chooses, Burford may assert this claim in a motion for post-conviction-relief. However, we remind Burford that she must first seek leave from the Supreme Court of Mississippi before presenting such a motion in the circuit court. Miss. Code Ann. § 99-39-7 (Rev. 2015).

### III. Whether the circuit court erred by excluding evidence concerning Burford's intent.

¶36. Burford argues the circuit court erred by preventing Burford's counsel from eliciting testimony regarding Dunnigan's intent. In particular, Burford points to a short line of questioning in which Burford's counsel asked her about Dunnigan's intent as he exited the vehicle to enter Smith's home. In response to the question, the circuit court interjected and warned Burford's counsel not to solicit hearsay testimony from her witness. Upon review, we find any argument relating to this exchange to be waived. *See Archer*, 118 So. 3d at 620; *see also Bush v. State*, 222 So. 3d 326 (Miss. Ct. App. 2017).

¶37. Procedural bar notwithstanding, the argument is without merit. "The standard of review for evidentiary rulings is an abuse of discretion." *Cook v. State*, 161 So. 3d 1057,

18

1065 (¶21) (Miss. 2015). Hearsay is defined as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c). We agree with the circuit court that the statement Burford attempted to offer was hearsay. Dunnigan, as the declarant, made the statement to Burford prior to entering Smith's home. Furthermore, Burford offered the statement at trial in attempt to show that she did not know Dunnigan's intent at the time he exited the vehicle.

¶38. Burford also argues that if her statement is hearsay, it is excepted by Mississippi Rule of Evidence 803(3). That exception states:

> The following [is] not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> > (3) A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

¶39. In the end, though, we need not decide whether Burford's statement met the above-listed hearsay exception because such error would be harmless. Regardless of whether circuit court made an erroneous evidentiary ruling, this Court we will not reverse a conviction unless "the error adversely affects a substantial right of a party." *Smith v. State*, 136 So. 3d 424, 435 (¶27) (Miss. 2014). The hearsay testimony Burford identified concerning Dunnigan's intent did not adversely affect her rights as the accused. As such, this issue is without merit, or, at most, the error is harmless.

19

**IV.    Whether the circuit court erred by ordering restitution.**

¶40.    Finally, Burford contends the circuit court erred by ordering her to pay an excessive or illegal restitution.  In response, the State asserts there was evidence in the record showing that Smith incurred pecuniary loss as a result of the burglary.  The State also points to testimony showing that some of the stolen items were never recovered.

¶41.    Our supreme court "has held that a defendant who fails to object to a restitution order at the time of sentencing waives the right to challenge it later." *Lowell v. State*, 229 So. 3d 1054, 1059 (¶16) (Miss. Ct. App. 2017) (citing *Powell v. State*, 536 So. 2d 13, 17 (Miss. 1988)).  The record shows that Burford did not object to the restitution at the time of sentencing or in a post-trial motion.  Thus, we find this issue is waived.

¶42.    This issue is also meritless.  Under Mississippi Code Annotated section 99-37-3(1) (Rev. 2015), "When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim . . . ."  Section 99-37-3(2) requires the trial court to consider the following:

> (a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;

> (b) the ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and

> (c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

¶43.    According to the record, the circuit court heard evidence of the stolen items total

20

approximate value. It also heard testimony breaking down portion amounts of those items. At sentencing, the circuit court ordered Burford to pay $5,000, to which Burford did not object. For these reasons, we find no error in the circuit court's restitution order.

## CONCLUSION

¶44. After our review, we affirm Burford's conviction and sentence.

¶45. **AFFIRMED.**

**CARLTON, P.J., AND LAWRENCE, J., CONCUR. BARNES, C.J., AND WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.; McDONALD, J., JOINS IN PART.**

**McCARTY, J., DISSENTING:**

¶46. The proof at trial that Cynthia Burford committed a burglary was scant. Instead, the bulk of the proof is that this was all actually the plan and actions of her boyfriend, Casey Dunnigan. In addition to the lean proof of her intent, the record shows her confession was coerced and that she should have been allowed to present more evidence in her defense. Because the confession should not have been admitted, and she should have been allowed to testify as to her state of mind at the site of the alleged burglary, I respectfully dissent.

¶47. "Long before Miranda warnings were mandated by the U.S. Supreme Court, it was well settled in Mississippi jurisprudence that a confession given after promises of leniency was incompetent as evidence." *Dunn v. State*, 547 So. 2d 42, 44-45 (Miss. 1989). The converse is true as well. "If a confession is the result of threat . . . it is not voluntary." *Manix v. State*, 895 So. 2d 167, 180 (¶40) (Miss. 2005).

21

¶48. "Our Supreme Court has repeatedly condemned the practice whereby law enforcement interrogators . . . convey to suspects the impression, however slight, that cooperation by the suspect might be of some benefit." *Abram v. State*, 606 So. 2d 1015, 1031 (Miss. 1992), *overruled on other grounds by Foster v. State*, 961 So. 2d 670, 672 (¶8) (Miss. 2007); *see also Agee v. State*, 185 So. 2d 671, 674 (Miss. 1966) (confession made after defendant was told "to tell the truth" and that "it would be lighter on him if he'd tell the truth" was involuntary and inadmissible).

¶49. The test in cases where a defendant is offered a promise or inducement in exchange for a confession "is whether the inducement is of a nature calculated under the circumstances to induce a confession irrespective of its truth or falsity[.]" *Robinson v. State*, 247 Miss. 609, 612-13, 157 So. 2d 49, 51 (1963). Merely urging or requesting a suspect "to speak the truth will not exclude a confession, but where such adjuration is accompanied by an expression that it would be better for the accused to tell the truth . . . makes the confession incompetent." *Id*. at 613.

¶50. Examples of banning these coerced confessions can be traced back to the 19th century. *See Mitchell v. State*, 24 So. 312 (Miss. 1898) (reversing when "[t]he confessions should have been excluded" since "[t]hey were not shown to have been free and voluntary" when a sheriff goaded a defendant into talking to him). Likewise, a confession is involuntary where a defendant "was given hope of leniency, and was confronted with the legal and religious consequences of his refusal to cooperate[.]" *Abram*, 606 So. 2d at 1033. In that case, the defendant was told that "a confession was in his best interest" and "it might be

22

easier on [him] if he cooperated." *Id*. 1021-22. Further, it was reiterated that there were "benefits of cooperation as well as the effects of not cooperating[.]" *Id*. at 1022. The benefits being "a chance for mercy if he volunteered to cooperate[,]" and the effects being the death penalty. *Id*. at 1022, 1032. The Supreme Court concluded "that the various statements and impressions conveyed to [the defendant] proximately caused him to confess" and "were more than sufficient to render his confession involuntary." *Id*. at 1033-34.

¶51. While the police did not physically shake a confession out of Burford, they certainly shook her down. Burford told the interrogating officers at least two-dozen times that she had not stolen anything. Officer O'Neil threatened Burford that she risked never seeing her children again and also told her that she was facing the maximum sentence—twenty five years in prison. The officer also made many promises to induce Burford into confessing. The interrogating officer told Burford that in exchange for her confession, he would look into getting her drug rehabilitation treatment. He also promised Burford that he would get her bail lowered if she confessed but threatened that her bail would be high if she failed to cooperate:

| [Burford:] | Now, you made several promises or suggestions to her that you would get her a lower bond; isn't that right? |
|---|---|
| [O'Neil:] | Yes, ma'am. |
| [Burford:] | And you made suggestions to her that her bond would be really high if she didn't confess; isn't that correct? |
| [O'Neil:] | Right. |

O'Neil also induced Burford with the promise of reduced charges:

23

| | |
|---|---|
| [Burford:] | And you would agree that y'all offered to drop charges if she would confess; isn't that correct? |
| [O'Neil:] | I believe we talked about the felony fleeing charge. |
| [Burford:] | And that it would be dropped if she would just confess? |
| [O'Neil:] | If she told the truth, we would work with that charge and do what we could. |
| [Burford:] | As long as that truth was a confession, correct? |
| [O'Neil:] | Yes. |

¶52. So, Burford was threatened with a twenty-five-year sentence, higher bond, and the possibility of her children being taken away from her. She also received promises of a lower bond, dropped charges, and rehabilitation treatment. This leaves us with the unshakeable conclusion that her confession was obtained through threats and inducements. In accord with over a century of precedent, her confession should have never been admitted. And any lawyer who failed to file a motion to suppress her confession was ineffective.

¶53. The defendant should have also been allowed to tell the jury about her state of mind at the time of the alleged crime. It is well settled that Mississippi Rule of Evidence 803(3) allows hearsay testimony if the out-of-court statement is used to establish the declarant's "then-existing mental, emotional, or physical condition," particularly as it pertains to the declarant's "motive, intent, or plan." MRE 803(3). In our case, it is clear from the transcript that Burford's counsel sought to elicit testimony from her regarding her boyfriend's alleged purpose of entering the dwelling. That information was especially relevant and admissible to establish Burford's state of mind as she watched her boyfriend enter the dwelling. In other

24

words, Burford could not possess the requisite intent necessary to commit burglary if she did not believe her boyfriend possessed the intent to burglarize a dwelling at the time he entered the home. This analysis begins with what her boyfriend told her he was going to do.

¶54. Accordingly, her boyfriend's state of mind is crucial to her defense. If the boyfriend actually shared with Burford that he intended to go inside the home with the intent to steal, then his intent under these circumstances might transfer to her. On the other hand, if he did not share those intentions, but rather informed Burford that he was entering the building to "use the bathroom," then it cannot be confidently said that Burford shared her boyfriend's intentions to steal when he entered the dwelling.

¶55. The majority opinion declines to address whether the excluded statement was allowed under Rule 803 because, in its view, any error on the trial court's part as to its exclusion would be harmless. Yet "intent" is an essential element to a burglary charge, so a defendant must be afforded an opportunity to negate that element for the purpose of ensuring a fair trial. It goes without saying that if even one juror believed that Burford did *not* have the intent to commit the burglary, then she would have been acquitted.

¶56. For purposes of a fair trial, and to allow her to best present her defense, Burford should have been allowed to present the statement to the jury "to the end of ascertaining the truth and securing a just determination." MRE 102. For this reason, and the attorney's failure to object to the coerced confession, I respectfully dissent.

**WESTBROOKS, J., JOINS THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

25